UNITED STATES of America, Appellant,

v.

**Charles Bruce NABORS and Craig Scott Keltner, Appellees.**

No. 93–3650.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1994.

Decided Jan. 6, 1995.

Rehearing and Suggestion for Rehearings En Banc Denied March 29, 1995.*

---

* McMillian, Circuit Judge, would grant the suggestion for rehearings en banc.

Michael D. Johnson, Little Rock, AR, argued (Paula J. Casey and Michael D. Johnson on the brief), for appellant.

Edward Witt Chandler, Mountain Home, AR, argued (Harold W. Madden, on the brief), for appellee Charles Nabors.

Michael C. Angel, Little Rock, AR, argued (William C. McArthur, on the brief), for appellee Craig Keltner.

Before HANSEN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

By a second superseding indictment filed in federal district court in April, 1993, the government charged that between late 1990 and mid-1992, Charles Nabors and Craig Keltner were members of a racketeering enterprise. That charge was one of 11 counts in the indictment. Both defendants moved to dismiss that count, contending that it was insufficient as a matter of law. The district court granted the motion. The government appeals. We reverse the order of the district court.

## I.

Under the federal rules, an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." *See* Fed.R.Crim.P. 7(c)(1). "[A]n indictment is [constitutionally] sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.... It is generally sufficient that an indictment set forth the offense in the words of the statute itself,

as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.' " *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), quoting *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882). "Indictments are normally sufficient unless no reasonable construction can be said to charge the offense." *United States v. Peterson,* 867 F.2d 1110, 1114 (8th Cir.1989).

The challenged count of the indictment alleges that the defendants are guilty of violating the statute that makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *See* 18 U.S.C. § 1962(c). The exact language of the racketeering count charges that the defendants "and others constituted an enterprise as defined in [the statute], that is: a group of individuals associated in fact for the purpose of obtaining monetary benefits for its members"; that the defendants were "employed by and associated with the enterprise"; that the enterprise "was engaged in, and [its] activities ... affected, interstate and foreign commerce"; and that the defendants "knowingly, and willfully did conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity," namely, various specified acts of armed robbery, kidnapping, interstate transportation of stolen property, attempted bank robbery, and mail and wire fraud.

Even though the language of the racketeering count tracks the statute almost exactly, the defendants contended that the indictment was insufficient by virtue of its failure to allege "a single continuous RICO 'enterprise' with an existence of its own." The district court agreed, holding that the racketeering count fails to identify "a RICO enterprise distinct from the culpable persons, the defendants"; fails to allege "any continuity of personnel ... [or] structure"; and fails to describe "an ascertainable structure distinct

from that in a pattern of racketeering." The Supreme Court has stated that "[a] violation of [18 U.S.C.] § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff [in this case, the government] must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The district court held, essentially, that the racketeering count fails to allege an "enterprise."

## II.

"[A] RICO enterprise must exhibit three basic characteristics: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that in a pattern of racketeering." *Atlas Pile Driving Co. v. DiCon Financial Co.,* 886 F.2d 986, 995 (8th Cir.1989). The racketeering count of the indictment clearly states that the defendants "and others" are the enterprise. The district court held, however, that because the government failed to identify any members of the enterprise other than Mr. Keltner's brother, there could be no "enterprise" in this case, as a matter of law. This is because, according to the district court, an enterprise may not be comprised "of only the defendants."

That holding of the district court is wrong, for two reasons. First, the government does not have to name the other members of the alleged enterprise until trial. There being no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case, *see* Fed. R.Civ.P. 56(c), the government has no duty to reveal all of its proof before trial. Under certain circumstances, of course, a defendant may move for a bill of particulars. *See* Fed. R.Crim.P. 7(f). Neither defendant did so, however, in this case. Second, the case law of this circuit specifically holds that a "collective entity is something more than the members of which it is comprised" and that individual defendants who are members of an enterprise may indeed be found guilty (or liable) under 18 U.S.C. § 1962(c) even if the enterprise is made up solely of those defen-

dants. *Atlas Pile Driving Co.,* 886 F.2d at 995.

■ The district court also held that because Mr. Keltner's brother withdrew from the enterprise in early 1991 (three months after the enterprise allegedly began the racketeering acts charged to it), there was no continuity of personnel. That holding fails to take into account *United States v. Kragness,* 830 F.2d 842, 856 (8th Cir.1987), which notes that "old members [of an enterprise] may leave, and new members may join, ... [but] the personnel of an enterprise may undergo alteration without loss of the enterprise's identity as an enterprise." Indeed, this circuit's definition of an enterprise specifically includes the phrase "*some* continuity ... of personnel" (emphasis supplied), *Atlas Pile Driving Co.,* 886 F.2d at 995, not "*complete* continuity."

■ The racketeering count charges that Mr. Nabors "was the leader of the enterprise and functioned as the primary planner and decision maker" and that Mr. Keltner "was a member of the inner core of the enterprise and functioned as a lookout, driver and, later, a principal assistant" to Mr. Nabors. The district court held, however, that because the indictment "indicates that [the defendants] were engaged in nothing more than sporadic criminal activity," the racketeering count fails properly to allege continuity of structure, that is, "an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis," *United States v. Kragness,* 830 F.2d at 856. *See also United States v. Lemm,* 680 F.2d 1193, 1198 (8th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983) ("[t]o guarantee that RICO will be utilized against its intended target, the 'enterprise' alleged must involve more than an association of criminals for the commission of sporadic crime").

The racketeering count alleges at least 15 different illegal acts committed over a seven-month period between late 1990 and mid–1991. As we have indicated above, it is up to the government to prove at trial that those alleged acts amounted to more than "sporadic crime," *United States v. Lemm,* 680 F.2d

at 1198. That proof, however, need not be offered until trial. Of course, if the government fails in that burden at trial and the district court grants a judgment of acquittal on the racketeering count at the close of the government's case, *see* Fed.R.Crim.P. 29(a), the government runs the risk of a mistrial because of the admission of evidence with respect to those illegal acts, only seven of which are charged in counts separate from the racketeering count. *See,* in an analogous context, *United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir.1978); *see also United States v. Reda,* 765 F.2d 715, 721 (8th Cir.1985). The decision to wait until trial and then run that risk, however, is the government's to make.

■ The same is true of the question of whether the enterprise is "distinct from the alleged pattern of racketeering activity," *Stephens, Inc. v. Geldermann, Inc.,* 962 F.2d 808, 815 (8th Cir.1992); *see also Diamonds Plus, Inc. v. Kolber,* 960 F.2d 765, 770 (8th Cir.1992) ("[t]he focus of the inquiry is whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense"). The district court relied on *Stephens, Inc.* in holding that the racketeering count fails to describe "an ascertainable structure" separate from the illegal acts listed as racketeering offenses. That opinion, however, dealt with summary judgment in a civil case. *See Stephens, Inc.,* 962 F.2d at 809–10, 815. As noted above, the question of the sufficiency of an indictment in a criminal case is a different one altogether.

## III.

For the reasons stated, we reverse the order of the district court.

HEANEY, Senior Circuit Judge, dissenting.

I would affirm the district court. The original indictment, dated October 21, 1992, alleged a conspiracy between Charles Nabors and Craig Keltner. It listed six overt acts, including (1) theft of an automobile, (2) breaking into a commercial establishment and stealing microphones and other materials, (3) breaking into a commercial establishment and stealing police scanners, walkie-

talkie radios, and other materials, (4) driving from Arkansas to Oklahoma and kidnapping the president and senior vice president of a bank in that state, and (6) attempting to extort money for the release of the bank vice president. The complaint also alleged in separate counts that Nabors and Keltner robbed two homes in Arkansas and that they transferred stolen jewelry (having a value in excess of $5,000) from Arkansas to Oklahoma.

On March 17, 1993, a superseding indictment was filed charging Nabors and Keltner with a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962–1968.[1] Eight racketeering acts were alleged, many of which were similar to those alleged as overt acts in the conspiracy count in the first indictment.[2] A second superseding indictment similar to the first was filed on April 20, 1993. On April 13, 1993, the defendants filed a motion to dismiss the RICO count charged in the superseding indictments. The court held a hearing on the motion to dismiss the count.

At the hearing, the court asked the Assistant United States Attorney (AUSA) representing the government to describe the structure of the enterprise. The AUSA offered the following description:

> Nabors was in charge of the organization[;] Bill Keltner, while he was involved in it, was more or less the second in command, and Craig Keltner was the bottom of the run. When Bill Keltner withdrew from it roughly around February, which is associated with the time that he returned to jail in Houston, Texas, Craig Keltner moved up to his position.

Defendants' Motion to Dismiss Hrg. Tr. at 2. When asked to describe the pattern of racketeering activity, other than the commission of a series of robberies and other federal crimes, the AUSA answered that the series

of criminal acts the defendants committed were interrelated in that they were part of a larger plan to extort, rob, and kidnap bank officials in Tulsa, Oklahoma. *Id.* at 3. The AUSA also stated that the defendants assisted one another with the purchase of automobiles and the payment of legal costs incurred as a result of their criminal activities, and that their acts were part of the same operation and shared a common modus operandi. *Id.* at 3–4, 6. The court then asked the AUSA whether the enterprise was an "association in fact of the two defendants and Keltner's brother," to which the AUSA responded affirmatively. *Id.* at 7. Noting the difficulty it had distinguishing the alleged pattern of racketeering in this case from the government's description of the enterprise's association in fact, the court stated: "[If you] take away [the] pattern of racketeering activity ... I don't know what you have here, except a couple of criminals maybe involved in a criminal conspiracy." *Id.* at 5. The court granted the defendants' motion to dismiss the RICO count reasoning that

> the only common factor that linked these parties and others together and defined them as a distinct group was their "direct or indirect participation" in Nabors' and Keltner's criminal activities. If the predicate acts are eliminated, the alleged association-in-fact enterprise has no form or structure, but is merely sporadic criminal activity.

*United States v. Charles Bruce Nabors et al.,* No. LR–CR–92–252(1)(2), slip op. at 4 (E.D.Ark. Aug. 30, 1993).

The trial judge was concerned, and properly so, that if he failed to dismiss the RICO count (thereby permitting the government to introduce evidence at trial that ordinarily would be inadmissible without the RICO

---

1. The Assistant United States Attorney representing the government at oral argument gave the following explanation for why the RICO count was charged:

   [W]e charged RICO ... because the pattern of activity that these individuals engaged in encompassed some crimes that could be charged [under] separate federal statute[s], other than RICO, and some that could not be charged in

federal court except through a RICO mechanism. Since all of those [statutes] were ... part of the activity of this group, RICO was the only mechanism to put their entire criminal conduct before the court.

2. The conspiracy and the substantive counts were re-alleged and substantive counts were added.

count), he would have no alternative but to declare a mistrial, necessitating a retrial of this complicated case.[3]

I agree entirely with the district court. At most this case involves three individuals who committed a series of criminal acts over approximately seven months. Although there is an allegation in the second superseding indictment that an independent enterprise existed, when this allegation is read in light of the government's concessions at the hearing on the motion to dismiss, it is clear that the government could prove little more at trial other than the existence of a series of criminal acts committed by a individuals who may have conspired with each other.

Had the district court simply dismissed the RICO count without giving the parties an opportunity for a hearing, I would have joined the majority's opinion. The judge, however, gave careful consideration to the matter. After listening to both sides' arguments at the hearing, he was persuaded that the government was not going to be able to prove the RICO count at trial.

Neither common sense nor logic supports the majority's position that the trial judge *must* allow the government to proceed to trial, notwithstanding that an indictment alleges facts that are sufficient to state a violation of a particular crime, where it is abundantly clear from the pretrial record that the government cannot prove the charged violation at trial.

---

3. The government conceded at oral argument that if it failed to prove the RICO count at trial, the district court would have no alternative but to grant a mistrial on all counts.