990 F.Supp. 1145 (1997)
VANLINER INSURANCE COMPANY, Plaintiff,
v.
ALL RISK SERVICE, LTD., et al., Defendant.
No. 4:96CV01384 GFG.
United States District Court, E.D. Missouri, Eastern Division.
December 31, 1997.
*1146 Kirk R. Crowder, Dean L. Franklin, J. William Newbold, III, Paul D. Chesterton, Todd G. Zimmerman, Erik O. Solverud, Thompson Coburn, St. Louis, MO, for Vanliner Ins. Co.
Scott P. Zoppoth, Louisville, KY, for All Risk Service, Ltd., North American Trucking Association, Inc.
Lori J. Baskins, Kohn and Shands, St. Louis, MO, Scott P. Zoppoth, Robert T. Haar, Monica J. Allen, Haar and Woods, LLP, St. Louis, MO, for Imperial Premium Finance, Inc.
James C. Leritz, Leritz and Plunkert, St. Louis, MO, Scott P. Zoppoth, Louisville, KY, for Marion Huff, Eric Huff, John Ragland, Mid America Insurance, Inc.
Thomas J. Palazzolo, Husch and Eppenberger, St. Louis, MO, Matthew J. Simon, Peter R. Silverman, Silverman and Collura, New York City, for Morton Okin, Robert Martire, Financial Relations Group, Inc., Global Management Consultants LLC.

MEMORANDUM AND ORDER
GUNN, Senior District Judge.
This matter is before the Court on defendants' motions to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. For the reasons set forth *1147 below, defendants' motions are granted in part and denied in part.

I. Background

Plaintiff Vanliner Insurance Co., whose principal place of business is in Missouri, sued North American Trucking Association, Inc. (NATA), All Risk Services, Ltd. (All Risk), Imperial Premium Finance, Inc. (IPF) and Wilbur Anthony Huff, president of NATA, on July 9, 1996. Plaintiff has since amended its complaint, adding Marion Huff, Eric G. Huff, Morton Okin, Robert Martire, John Ragland, Financial Relations Group (Financial), Mid-America Insurance, Inc. (Mid America), and Global Management Consultants LLC., (Global). All Risk, NATA, Wilbur Huff, Marion Huff, Eric G. Huff, John Ragland and Mid-America are Kentucky residents; IPF is a Delaware corporation with its principal place of business in California; Financial and Global are New York residents.
The record establishes the following. By written agreement dated February 15, 1995, Vanliner agreed to provide property and casualty insurance to NATA members (independent truck drivers and companies). NATA, as program administrator, and All Risk, as NATA's insurance agent, agreed to solicit business and collect premiums under the insurance program in return for commissions. All premiums received by NATA and All Risk were to be placed in a trust account for Vanliner. Vanliner alleges that the parties understood that Vanliner would finance premiums if the total annual premium was in excess of $100,000. Under this arrangement, the insured would pay a portion of the annual premium, then pay the remainder in ten monthly installments to Vanliner.
On March 16, 1996, IPF, in the business of financing insurance premiums, entered an agreement with All Risk and with one of NATA's members, Gulf Northern Transport, Inc. (Gulf Northern), pursuant to which IPF would provide financing in the amount of $588,000 to Gulf Northern on three Vanliner policies. Gulf Northern granted IPF a security interest in any unearned premiums. Vanliner alleges that IPF and NATA/All Risk agreed that IPF would provide NATA/All Risk with the total financed amount before the time that the premiums were actually due.
By letter to IPF dated March 17, 1995, Vanliner agreed that "payment of premiums to NATA and All Risk constituted payment to Vanliner." Vanliner alleges that to secure this letter, NATA, All Risk and IPF misrepresented that the letter would apply only to the three Gulf Northern policies issued by Vanliner, and concealed from Vanliner the agreement that IPF would provide the advance to NATA.
In June 1995, IPF financed an additional $50,000 for premiums due on a fourth Vanliner policy issued to Gulf Northern. Vanliner alleges that the defendants misappropriated a portion of the advance received from IPF on the Gulf Northern policies, as well as on other Vanliner policies. In December 1995 or January 1996, Wilbur Huff (according to Vanliner) or IPF (according to IPF) requested that the original three Gulf Northern policies be canceled for nonpayment of premiums, and in January 1996 Vanliner did so. Similarly, the fourth Gulf Northern policy was canceled in February 1996. IPF then demanded that Vanliner pay IPF the unearned premiums on these policies (approximately $140,000) and, according to Vanliner, a portion of the advance IPF provided to NATA.
Vanliner seeks a declaration that it is not liable on several insurance policies, and that, among other things, defendants NATA and All Risk are liable to Vanliner for certain amounts owed to defendant IPF. Vanliner also seeks damages for fraudulent inducement, negligent misrepresentation, breach of contract, breach of fiduciary duty and conversion. Finally, Vanliner has recently amended its complaint to add counts pursuant to Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. and for breach of fiduciary duty pursuant to Ky.Rev.Stat. § 304.9-400.

II. Motion to Dismiss Fraud Claims

Defendants first move the Court to dismiss plaintiff's fraud claims, claiming that plaintiff has failed to plead the requisite facts. Defendants made an identical motion with respect to plaintiff's first amended complaint. *1148 The Court denied that motion on December 31, 1996. The Court has carefully reviewed the second amended complaint and finds that, if anything, it is more detailed than the first. The Court will deny defendants' motion on this point.

III. Motion to Dismiss Conversion Claims

Defendants next move to dismiss Counts V-XIV of the complaint, claiming that plaintiff cannot maintain a claim for conversion. Again, defendants have merely refiled their previous motion with minor changes. As with defendants' motion on the fraud count, the Court finds its previous order applicable and will deny the motion to dismiss the conversion claims.

IV. Motion to Dismiss RICO Claims

Defendants also move to dismiss Count XXIX of the second amended complaint, which plaintiff brings pursuant to RICO. Plaintiff alleges that defendants Wilbur Huff, Eric Huff, Marion Huff, Okin, Martire and Ragland formulated a plan to defraud it. According to plaintiff, these defendants fraudulently induced plaintiff to execute the March 17, 1995 letter in which it agreed that payments of premiums to All Risk and NATA constituted payment of premiums to it. Plaintiff alleges that these defendants then unlawfully retained premiums and misappropriated other funds subject to the agreements between All Risk, NATA and plaintiff. Plaintiff alleges that this scheme, beginning with the March 17, 1995 letter, required numerous instances of mail and wire fraud and that these acts are predicate acts under RICO.
Defendants correctly point out that because plaintiff canceled the insurance policies in February 1996, the alleged scheme was closed-ended, taking place over only eleven months. Defendants argue that a scheme lasting less than a year does not satisfy the continuity requirement of RICO.
To maintain a successful RICO claim, a plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); United HealthCare Corp. v. American Trade Ins. Co., 88 F.3d 563, 571 (8th Cir.1996). As noted above, the predicate acts here are the alleged mail and wire fraud, the first of which took place on March 17, 1995, and the last of which took place no later than February 1996, when Vanliner canceled all the policies issued through the defendants.
In H.J., the Supreme Court held that the required continuity could be both closed-ended or open-ended, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., 492 U.S. at 241. The Court stated:
[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.
492 U.S. at 242. The Eighth Circuit, applying H.J. in Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir.1993), held that the requirement of continuity over a closed period is not met when the predicate acts merely extend for eleven months. In contrast, in United HealthCare, the Eighth Circuit held that a plaintiff had shown the required continuity where the racketeering acts were undertaken over a period of at least two years. 88 F.3d at 572.
Plaintiff does not dispute that the trend of authority is to disallow claims alleging closed-ended schemes lasting less than a year. See Primary Care, 986 F.2d at 1215 (noting cases). Instead, plaintiff makes two separate arguments in support of its contention that it has met the continuity requirement. First, plaintiff relies on United States v. Nabors, 45 F.3d 238 (8th Cir.1995), arguing that Nabors held that the continuity requirement could be established in a time shorter than that here. The Court disagrees. Plaintiff is correct that Nabors involved a criminal RICO proceeding in which the pattern of racketeering took place over seven months. Id. at 241. However, the *1149 Nabors court did not address the continuity issue. Nor does it appear that the parties raised it. Given the weight of authority to the contrary, therefore, the Court believes plaintiff's reading of Nabors is overbroad.
Second, plaintiff argues that the predicate acts it complains of were preceded by others which took place long before March 1995. Plaintiff places great reliance on Lagere & Walkingstick Ins. Agency, Inc. v. Huff, 124 F.3d 197 (6th Cir.1997), in which the debtor, Wilbur Anthony Huff, also a defendant here, committed acts similar to those alleged in plaintiff's complaint. According to the facts as stated in Lagere, Wilbur Anthony Huff, president of Kerr Agency (Kerr), entered into an agreement with Lagere in which Kerr agreed to collect premiums for Lagere, subtract a commission, and forward the balance. Id. at 197. Huff/Kerr did not forward the payments in their entirety, and after Lagere obtained a default judgment against him, Huff declared bankruptcy. Id. Examining these facts, the Sixth Circuit found that Huff's debt to Lagere was the result of defalcation while acting in a fiduciary capacity. Id. at 197. Accordingly, the court found the debt non-dischargeable under 11 U.S.C. § 523(a)(4). Id.
Plaintiff is correct that Wilbur Anthony Huff's actions in Lagere are similar to those alleged here. However, nothing in Lagere indicates that Huff committed predicate acts as defined by RICO. The distinction rests in the difference between defalcation and fraud. Under section 523(a)(4), defalcation "includes the innocent default of a fiduciary who fails to account fully for money received." Thus, "[a]n individual may be liable for defalcation without having the intent to defraud." In re Cochrane, 124 F.3d 978, 984 (8th Cir.1997) (citing Lewis v. Scott, 97 F.3d at 1186 (9th Cir.1996)). In Lagere, the finding was for defalcation. Nowhere in Lagere does the Sixth Circuit indicate that Huff defrauded Lagere. This Court is confident that the Sixth Circuit is capable of discerning fraud; therefore it believes that Lagere establishes only that Wilbur Anthony Huff committed defalcation prior to March 1995.
Having found that Lagere establishes only that Huff's prior activities constituted defalcation, it is clear that Lagere will not help plaintiff to meet the continuity requirement. To prove a pattern of racketeering activity, it is necessary to prove that defendant committed at least two predicate acts of racketeering activity. H.J. v. Northwestern Bell Telephone Co., 492 U.S. at 237-238. This requires proof of fraud. Manion v. Freund, 967 F.2d 1183 (8th Cir.1992). Because Lagere does not establish that Wilbur Anthony Huff committed a fraudulent, i.e. a predicate act, its facts cannot be used to extend the time over which the scheme alleged here took place. Thus, plaintiff alleges a scheme that took place over eleven months. Accordingly, the Court will dismiss Count XXIX of plaintiff's complaint.

V. Personal Jurisdiction

The Court now turns to defendants Marion Huff, Eric Huff, Ragland, Okin, Martire, Financial and Global's contention that plaintiff's complaint against them must be dismissed for lack of personal jurisdiction. To determine whether it may properly exercise personal jurisdiction over a non-resident defendant, the Court engages in a two-step inquiry: First, did defendant commit one of the acts enumerated in the long-arm statute; and second, does the exercise of personal jurisdiction over defendant violate the due process clause of the fourteenth amendment. Digi-Tel Holdings v. Proteq Telecommunications, 89 F.3d 519 (8th Cir.1996). Plaintiff, the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the party challenging jurisdiction. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir.1982). The Court will examine jurisdiction as to each of the defendants in turn.[1]

A. Eric Huff

According to the affidavit submitted by Vanliner's former president, the Program Administration Agreement was sent by Vanliner *1150 to NATA and All Risk and returned to Vanliner with Eric Huff's signature. Vanliner's president then signed the agreement. This is enough to establish this Court's personal jurisdiction over Eric Huff. See Portnoy v. Defiance, Inc., 951 F.2d 169, 171 (8th Cir.1991) (execution of contract in Missouri satisfied Missouri long-arm statute and Due Process clause in tort action related to the contract).

B. John Ragland

Plaintiff's complaint alleges that defendant Ragland, among other things, tortiously converted funds properly belonging to Vanliner; negligently underwrote premium financing; and breached his fiduciary duty to Vanliner. Nothing in the record indicates that Mr. Ragland has ever been present in Missouri, owned property in Missouri, or entered into a contract in Missouri. Plaintiff contends this Court has jurisdiction over Ragland because he committed extraterritorial acts having consequences in Missouri.
Under Missouri law, commission of a tortious extraterritorial act having consequences in Missouri is sufficient to invoke tortious long-arm jurisdiction. Here, plaintiff has alleged facts from which it could be found that Ragland misappropriated premium payments rightfully belonging to plaintiff. Therefore, the Court finds that Missouri long-arm statute confers jurisdiction upon defendant Ragland based on the "tortious act" provision of the statute.
Turning to the due process portion of the inquiry, several cases under Missouri law have held that a plaintiff may not invoke tortious long-arm jurisdiction consistent with due process when the defendant's only contact with Missouri is the extraterritorial act or acts having consequences in Missouri. See Peabody Holding Co. v. Costain Group PLC, 808 F.Supp. 1425 (E.D.Mo.1992) (collecting cases). Plaintiff attempts to distinguish this case by asserting that Ragland had contact with Missouri when he made telephone calls, sent wire transmissions and corresponded with plaintiff as part of the tortious activity giving rise to this lawsuit.
It is well settled that such contacts, standing alone, do not constitute purposeful availment such that invoking jurisdiction is consistent with due process. Burlington Indus., Inc. v. Maples Indus., 97 F.3d 1100 (8th Cir.1996); Digi-Tel Holdings v. Proteq Telecommunications, 89 F.3d 519 (8th Cir.1996). Here, however, the phone calls and other communication do not stand alone. Rather, plaintiff alleges that they took place in addition to, and as part of, tortious conduct deliberately aimed at the Missouri plaintiff. Moreover, the contacts alleged concerned the subject matter of this lawsuit. When viewed in their entirety, defendant Ragland's actions indicate that personal jurisdiction here does not offend fair play and substantial justice. Peabody Holding Co. v. Costain Group PLC, 808 F.Supp. 1425; Nelson v. R. Greenspan & Co., 613 F.Supp. 342 (E.D.Mo.1985).

C. Marion Huff

Plaintiff argues that personal jurisdiction over Marion Huff is proper for the same reason as jurisdiction over Ragland, i.e., that he knew his extraterritorial acts would have consequences in Missouri. In support of this assertion, plaintiff has produced deposition testimony and affidavits indicating Marion Huff approved all disbursements for All Risk and NATA. This included signing checks forwarded to plaintiff. Plaintiff has also provided affidavits attesting to numerous phone calls, wire transmissions, and other correspondence from Marion Huff to plaintiff. As noted above, the phone calls and correspondence alone do not confer jurisdiction. However, like Ragland, plaintiff's allegation is that Marion Huff tortiously acted, during these contacts and at other times, with the knowledge that the acts would have consequences in Missouri. Accordingly, the Court finds that the exercise of personal jurisdiction over Marion Huff would not violate constitutional due process.

D. Okin, Martire, Financial & Global

Like Ragland and Marion Huff, Okin and Martire are not residents of Missouri. Their physical contacts with Missouri appear to have been minimal. However, like Ragland and Marion Huff, plaintiff has come forth with affidavits attesting that Okin and Martire made numerous phone calls and corresponded with defendant in addition to tortious *1151 extraterritorial acts that had consequences in Missouri. Plaintiff also alleges that these acts were purposeful and done with knowledge that plaintiff would feel the consequences of the acts in Missouri. The Court therefore finds that the exercise of personal jurisdiction over Okin and Martire would not violate due process. In addition, the Court finds that plaintiff's allegations that Global and Financial were used by Martire and Okin to defraud plaintiff are sufficient to establish jurisdiction over them as well.

VI. Motion to Dismiss Count XIX

Marion Huff, Eric Huff, Wilbur Anthony Huff, Ragland, Okin, Martire, Financial and Global move to dismiss Count XIX of plaintiff's complaint, which alleges a breach of fiduciary duty pursuant to Ky.Rev.Stat. § 304.9-400. That statute reads:
Reporting an accounting for premiums.
That portion of all premiums or monies which an agent or solicitor collects from an insured and which is to be paid to an insurer, its agents, its managing general agents or his principal because of the assumption of liability through the issuance of polices or contracts for insurance, shall be held by the agent or solicitor in a fiduciary capacity and shall not be misappropriated or converted to his own use or illegally withheld by the agent or solicitor.
Marion Huff, Ragland, Okin, Martire, Financial and Global contend that they are not licenced insurance agents, and therefore cannot be held liable under the statute. Plaintiff does not dispute this point, instead arguing that application of the statute is proper because these defendants are "solicitors."
The language of § 304.9-400 at issue here is "... shall be held by the agent or solicitor ..." (emphasis added). That this language creates a fiduciary duty for two classes of individuals is supported by the statutory definitions of the relevant terms. There, the Kentucky legislature chose to use the terms "agent" and "solicitor" to describe two distinct classes of individuals. Ky.Rev.Stat. § 304.9-020 defines "agent" as: "[A]n individual, firm, or corporation appointed by an insurer to solicit applications for insurance...." In contrast, Ky.Rev.Stat. § 304.9-050 defines "solicitor" as: "[A]n individual employed by an agent to solicit applications for insurance...." Clearly then, plaintiff is correct when it asserts that solicitors as well as insurance agents are subject to the provisions of § 304.9-400.
This does not end the inquiry, however. Kentucky requires that insurance agents and the solicitors they employ pass a licensing requirement. Ky.Rev.Stat. § 304.9-080. Therefore, a reading of the statutory scheme as a whole reveals that "agent" and "solicitor" in § 304.9-400 refer to individuals who possess agent's or solicitor's licenses. Unfortunately, neither party has fully addressed the licensing issue as to the moving defendants. Accordingly, the Court will refrain from ruling on this issue until the parties have properly presented it.
Anthony and Eric Huff move to dismiss this count as to them, claiming that they cannot be held liable under the statute because they did not participate in the collection of premiums. However, neither has provided any evidence in support of this contention, which they first raised in their reply to plaintiff's response to their motion to dismiss. Because the Court must take plaintiff's allegations as true when evaluating a motion to dismiss, it must therefore deny this portion of the motion to dismiss.

VII. Conclusion

For the reasons stated above, the Court finds that plaintiff has adequately plead its fraud and conversion claims. The Court further finds that exercising jurisdiction over the defendants in this action will not violate due process. However, the Court finds that plaintiff has failed to show that it can establish the continuity prong of the alleged RICO scheme and therefore will dismiss Count XXIX of the second amended complaint. Finally, the Court will order the parties to further brief the issue of whether the defendants here are either licensed insurance agents or solicitors in Kentucky such that plaintiff may maintain an action pursuant to Ky.Rev.Stat. § 304.9-400.
Accordingly,
IT IS HEREBY ORDERED that defendants' motions to dismiss (Docs. No. 78, 92) *1152 are GRANTED in part and DENIED in part.
IT IS FURTHER ORDERED that the parties shall, within fifteen (15) days of the date of this order, brief the Court on the issue of the applicability of Ky.Rev.Stat. § 304.9-400 as to the defendants consistent with the above findings.
NOTES
[1] Plaintiff first asserts that jurisdiction over these defendants is proper pursuant to 18 U.S.C. §§ 1965(b) and (d) which govern jurisdiction in RICO cases. Obviously, because the Court will dismiss plaintiff's RICO claim, it need not address this assertion.