**UNITED STATES of America, Plaintiff,**

v.

**John T. SPURLOCK, Defendant.**

**No. 05–00044–01–CR–W–GAF.**

United States District Court, W.D. Missouri, Western Division.

Sept. 9, 2005.

Katharine Fincham, Asst. U.S. Atty., Kansas City, MO, for plaintiff.

Travis D. Poindexter, Asst. Fed. Public Defender, Kansas City, MO, for defendant.

### ORDER

FENNER, District Judge.

Now pending before the Court is Defendant's Motion to Dismiss the Indictment charging him with attempted enticement of a child to engage in prohibited sexual conduct, attempted transfer of obscene material to a minor, and interstate travel to attempt to engage in a sexual act with a minor on the ground that it is legally impossible for a conviction to be entered against him since there was no minor involved.

United States Magistrate Judge Robert E. Larsen entered his Report and Recommendation on August 25, 2005. On September 7, 2005, defendant filed his Objections to the Report and Recommendation, and on September 9, 2005, defendant filed his Supplemental Objection to the Report and Recommendation.

As reflected in Judge Larsen's Report and Recommendation, in order to be convicted of attempt to commit a crime, the government need only prove (1) that the defendant had the specific intent to engage in the conduct for which he is charged, and (2) that he took a substantial step toward commission of the offense. _United States v. Burks_, 135 F.3d 582, 584 (8th Cir.1998), citing _United States v. Buchanan_, 985 F.2d 1372, 1376 (8th Cir.1993), _cert. denied_, 512 U.S. 1228, 114 S.Ct. 2727, 129 L.Ed.2d 850 (1994). The specific fact scenario presented here where the defendant believed he was enticing or persuading a minor to engage in sex has not been addressed by the Eighth Circuit. However, as discussed in Judge Larsen's Report and Recommendation, in the Federal Circuits that have addressed this question, the elements of attempt to commit a crime have been applied as in other crimes of attempt.

Although Congressional intent was successfully argued in this district in _United States of America v. Jan Helder, Jr._, Case No. 05–00125–01–CR–W–DW, the Congressional Record was further developed before Judge Larsen. The Congressional Record presented to Judge Larsen reflects that Congress intended to criminalize attempt to persuade or entice a minor to engage in sex even when an undercover officer is posing as a "minor."

Furthermore, as discussed by Judge Larsen, although there may have been factual impediments to commission of the intended acts by virtue of the fact that there was actually no minor involved, the intended acts were not legally impossible. Legal impossibility does not exist and factual impossibility is not a basis for dismissing an indictment.

Upon careful and independent review of the pending motion, defendant's objections to the Magistrate's Report and Recommendation, as well as the applicable law, this Court hereby adopts and incorporates as its own Opinion and Order the Report and Recommendation of United States Magistrate Judge Robert E. Larsen.

Accordingly, it is hereby ORDERED that Defendant's Motion to Dismiss is OVERRULED and DENIED.

SO ORDERED.

### REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO DISMISS BASED ON LEGAL IMPOSSIBILITY

LARSEN, United States Magistrate Judge.

Before the court is defendant's motion to dismiss the indictment charging attempted enticement of a child to engage in prohibit-

ed sexual conduct, attempted transfer of obscene material to a minor, and interstate travel to attempt to engage in a sexual act with a minor on the ground that it is legally impossible for a conviction to be entered against him since there was no minor involved. I find that no actual minor is required to charge and convict for attempting to violate the statutes at issue in this case. Therefore, defendant's motion to dismiss the indictment should be denied.

## I. BACKGROUND

On February 9, 2005, an indictment was returned charging defendant with three counts of using a facility of interstate commerce to attempt to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (counts one, two, and four), two counts of attempting to transfer obscene material to a minor, in violation of 18 U.S.C. § 1470, (counts three and five), one count of interstate travel to attempt to engage in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b) (count six), and one count of criminal forfeiture pursuant to 18 U.S.C. § 2253 (count seven).

On August 10, 2005, defendant filed the instant motion to dismiss (document number 24). In support of his motion, defendant argues that "[b]ecause the abovementioned statutes only criminalize attempts that involve minors, it is legally impossible for a conviction to be entered against Mr. Spurlock for the allegations contained in the indictment." In support of his argument, he cites the Judgment of Acquittal entered in the case of *United States of America v. Jan Helder, Jr.*, 05–00125–01–CR–W–DW, on August 5, 2005, finding that an actual minor is required for conviction under § 2422.

On August 17, 2005, the government filed a response in opposition (document number 25). The government points out that the full legislative history establishes that no minor is necessary for a violation of these statutes.

## II. SUMMARY OF THE FACTS

The following factual summary is taken from the detention order entered on February 10, 2005:

On January 20, 2005, Task Force Officer ("TFO") Angie Wilson entered a chatroom "Daughters who love Daddies" posing as Mary Roberts, a 35–year–old mother of 13–year–old Amber, ten-year-old Mandy, and eight-year-old Austin. TFO Wilson was sent an instant message from someone using a screen name linked to defendant John Spurlock. During several instant message exchanges, defendant expressed an interest in performing oral sex, receiving oral sex, and engaging in sexual intercourse with the ten-year-old, the 13–year–old, and the mother. He provided his cellular telephone number and his name, he said he had a gold Kia Rio, and he said he was using his computer at the jewelry store where he works with his brother.

On January 25, 2005, defendant was chatting online with TFO Wilson who was posing as Mary Roberts. Defendant asked if he could speak to 13–year–old Amber, and TFO Wilson began speaking as Amber. Defendant was using a web cam, where TFO Wilson could see him but he could not see her, and he was masturbating. He asked what "Amber" was wearing, he asked her if she was wearing panties, and he asked her to remove her panties so that her 10–year–old sister could touch her. Defendant asked "Amber" to touch herself. Defendant asked her to have her 10–year–old sister "Mandy" remove her panties so that her mother could touch her.

During a web chat, TFO Wilson asked defendant if he had ever had sex with a minor before. Defendant said he had had sex with someone about age 15 when he

was 25. During a subsequent telephone conversation, TFO Wilson again asked defendant if he had ever had sex with a minor. He stated that when he was 22 or 23, he had sex with a ten-year-old.

On February 3, 2005, defendant asked TFO Wilson to call him because he was thinking of driving to Kansas City on February 5, 2005, to engage in sex with both minor females and their mother. TFO Wilson telephoned him and confirmed his plan to travel to Kansas City, Missouri, from Texas, to engage in sexual acts with the two minor females.

On February 3, 2005, it was confirmed through Verizon Wireless that the phone number provided by defendant was subscribed to by defendant John Spurlock.

On February 4, 2005, TFO Wilson spoke with defendant two times by telephone. Defendant confirmed his plans to travel on February 5, 2005, and meet "Mary", "Amber", and "Mandy" at Motel 6, 6400 87th Street, Kansas City, Missouri. Defendant stated, "I'm looking forward to tomorrow.... I think it's going to be a lot more fun than we realize... I think your daughters will enjoy it and I know I will." Defendant offered the following for how to start the experience once everyone arrived at the motel room, "I would be sitting in a chair or something and they unzip my pants and they start exploring."

On February 5, 2005, TFO Wilson telephoned defendant as previously arranged. He stated his uncle had died the night before and he was not going to be coming. Defendant telephoned TFO Wilson back approximately 30 minutes later and said he was going to try to come. He stated that he had looked for a Polaroid camera, but was unable to locate one. Defendant telephoned TFO Wilson again and stated he was coming. He told her he had "shaved fresh down there" and he had brought a DVD player along with very x-rated movies in case the girls wanted to watch them.

He believed the movies could answer some of their questions.

At approximately 7:40 p.m., on February 5, 2005, defendant telephoned TFO Wilson and told her he had arrived and was checked into room 224 at Motel 6. He stated he had already purchased condoms.

A gold Kia Rio with Texas plates was located in the Motel 6 parking lot by TFO Houlahan. Defendant was arrested without incident and transported to the FBI office for an interview. Defendant was advised of his Miranda rights and then admitted that he had chatted with someone he believed to be Mary who had two daughters, 13 and 10, who had a lot of questions about sex. Defendant admitted he masturbated on his web cam for Mary's daughters. He offered to come to Kansas City, Missouri, to help teach the young girls about sex and answer their questions. He stated, "I know I'm totally wrong, I'm glad you caught me." Defendant denied that the previous sexual encounters he told "Mary" about had occurred. However, he admitted chatting on the computer with other minors and discussing meeting with them. Defendant admitted to receiving and sending images of child pornography to friends he met in chat rooms. Those images are of children ages ten to 17 involved in sexually explicit behaviors.

At the time of his arrest, defendant had in his possession condoms, lubricant, a six-pack of beer, a DVD player, x-rated videos, a homemade ski mask, and duct tape.

## III. THE INDICTMENT

Count one of the indictment reads as follows:

Between on or about January 20, 2005, and February 6, 2005, in the Western District of Missouri and elsewhere, defendant JOHN T. SPURLOCK knowingly used a facility of interstate commerce to attempt to persuade, induce,

and entice an individual who had not attained the age of 18 years to engage in sexual activity for which the defendant could be charged with a criminal offense, that is, the following felonies proscribed by the statutes of the State of Missouri: statutory rape in the first degree (Mo. St.566.032); and statutory sodomy in the first degree (Mo.St.566.062); by attempting to persuade the mother of two minor females to allow the defendant to teach the two minor females about sex, all in violation of Title, 18, United States Code, Section 2422(b).

Count two of the indictment reads as follows:

On or about January 25, 2005, in the Western District of Missouri and elsewhere, defendant JOHN T. SPURLOCK knowingly used a facility of interstate commerce to attempt to persuade, induce, and entice an individual who had not attained the age of 18 years, that is, 13–year–old "Amber," to engage in sexual activity for which the defendant could be charged with a criminal offense, that is, the following felonies proscribed by the statutes of the State of Missouri: statutory rape in the first degree (Mo. St.566.032); and statutory sodomy in the first degree (Mo.St.566.062); all in violation of Title, 18, United States Code, Section 2422(b).

Count three of the indictment reads as follows:

On or about January 25, 2005, in the Western District of Missouri and elsewhere, defendant JOHN T. SPURLOCK knowingly used a facility of interstate commerce to attempt to transfer obscene matter to another individual who had not attained the age of 16 years, that is, 13–year–old "Amber," knowing that such other individual has not attained the age of 16 years, in violation of Title 18, United States Code, Section 1470.

Count four of the indictment reads as follows:

On or about January 25, 2005, in the Western District of Missouri and elsewhere, defendant JOHN T. SPURLOCK knowingly used a facility of interstate commerce to attempt to persuade, induce, and entice an individual who had not attained the age of 18 years, that is, 10–year–old "Mandy," to engage in sexual activity for which the defendant could be charged with a criminal offense, that is, the following felonies proscribed by the statutes of the State of Missouri: statutory rape in the first degree (Mo. St.566.032); and statutory sodomy in the first degree (Mo.St.566.062); all in violation of Title, 18, United States Code, Section 2422(b).

Count five of the indictment reads as follows:

On or about January 25, 2005, in the Western District of Missouri and elsewhere, defendant JOHN T. SPURLOCK knowingly used a facility of interstate commerce to attempt to transfer obscene matter to another individual who had not attained the age of 16 years, that is, 10–year–old "Mandy," knowing that such other individual has not attained the age of 16 years, in violation of Title 18, United States Code, Section 1470.

Count six of the indictment reads as follows:

On or about February 5, 2005, in the Western District of Missouri and elsewhere, the defendant JOHN T. SPURLOCK knowingly traveled in interstate commerce for the purpose of attempting to engage in illicit sexual conduct with another person, in violation of Title 18, United States Code, Section 2423(b).

## IV. SUFFICIENCY OF INDICTMENT

It is well established that an indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Just*, 74 F.3d 902, 903 (8th Cir.1996). The sufficiency of the indictment is to be judged by practical, and not by technical considerations. *Rood v. United States*, 340 F.2d 506, 509 (8th Cir.), *cert. denied*, 381 U.S. 906, 85 S.Ct. 1452, 14 L.Ed.2d 287 (1965). An indictment ordinarily is held sufficient unless it is so defective that by no reasonable construction can it be said to charge the offense for which the defendant was convicted. *United States v. Nabors*, 45 F.3d 238, 239 (8th Cir.1995).

Defendant relies on the judgment of acquittal in the *Helder* case to support his argument that the government may not charge him with violations of these statutes when the person to whom he was communicating was actually an adult and not a minor under the age of 18.

The case law prior to the *Helder* opinion supports the government's position that the defendant need only believe he is communicating with a minor in order to be convicted of an attempt to violate these statutes. In *United States v. Murrell*, 368 F.3d 1283 (11th Cir.), *cert. denied*, —— U.S. ——, 125 S.Ct. 439, 160 L.Ed.2d 324 (2004), Anthony Murrell used his computer to arrange what he thought would be a sexual encounter with a 13–year–old girl through who he thought was that girl's father. In reality, a detective was on the internet posing as a man willing to rent his 13–year–old daughter to Murrell for sex in exchange for $300. Murrell spoke with the "father" on the telephone, stated that he wanted to have oral sex and intercourse with the daughter, and agreed to meet at a Holiday Inn. Murrell arrived at the hotel at the specified time, bringing with him a teddy bear, $300 cash, and a box of condoms. He met with the detective, believing the detective was the girl's father, and stated that he was ready to meet the girl.

Murrell argued that his conduct was not criminally proscribed by the language of § 2422(b) because he did not directly communicate with a minor or a person he believed to be a minor. The court of appeals, in rejecting that argument, held that:

> To sustain a conviction for the crime of attempt, the government need only prove (1) that the defendant had the specific intent to engage in the criminal conduct for which he is charged and (2) that he took a substantial step toward commission of the offense....

*Id.* at 1286. The court found that by negotiating with the purported father of a minor, Murrell attempted to stimulate or cause the minor to engage in sexual activity with him, which fits squarely within the definition of "induce," satisfying the first element of attempt. The court further found that Murrell took a substantial step toward inducing a minor to engage in illicit sexual acts, thereby satisfying the second element of criminal attempt. He did this by (1) making several explicit incriminating statements to Detective Spector; (2) traveling two hours to another county to meet a minor girl for sex in exchange for money; and (3) carrying a teddy bear, $300.00 in cash, and a box of condoms when he arrived at the meeting site. "His actions, taken as a whole, demonstrate unequivocally that he intended to influence a young girl into engaging in unlawful sexual activity and that his conduct was therefore criminal."

Therefore, the *Murrell* court specifically found that "direct communication with a minor or supposed minor is unnecessary under the text of § 2422(b), and that Murrell's conduct satisfied the elements of attempt".

In *United States v. Root*, 296 F.3d 1222 (11th Cir.2002), *cert. denied*, 537 U.S. 1176, 123 S.Ct. 1006, 154 L.Ed.2d 921 (2003), John Root traveled across state lines for the purpose of having sex with a minor after he engaged in sexually explicit conversations over the internet with a law enforcement officer posing as a 13–year–old girl. He was convicted of attempting to violate § 2422(b) and § 2423(b). The court of appeals rejected Root's argument that an actual minor is necessary for a conviction of either statute, citing *United States v. Farner*, 251 F.3d 510 (5th Cir. 2001); *United States v. Miller*, 102 F.Supp.2d 946, 947–948 (N.D.Ill.2000); and *United States v. Powell*, 1 F.Supp.2d 1419, 1421 (N.D.Ala.1998), *aff'd*, 177 F.3d 982 (11th Cir.1999), all of which held that an actual minor is not required for an attempt conviction under these statutes.

In *United States v. Han*, 230 F.3d 560 (2d Cir.2000), an undercover officer posed as a 13–year–old girl on the internet, and Pierce Han began sexually explicit conversations with her in a chat room. He was arrested after he crossed state lines and arrived at the pre-arranged meeting place, intending to meet the girl for sex. Han's conviction for violating the attempt provision of § 2423(b) was affirmed.

In *United States v. Meek*, 366 F.3d 705 (9th Cir.2004), police obtained permission from a minor and his father to use the minor's computer and AOL account (including his user name) to visit chat rooms. The minor had previously been involved in posing for sexually explicit pictures for someone he met in an Internet chat room. A detective posed as the minor and received e-mails and instant messages from the defendant, Meek, who sent a sexually explicit photograph through the computer and spoke with the "boy" about having sex with him. Meek was charged with a violation of 18 U.S.C. § 2422(b). He argued that § 2422(b) does not apply when the actual victim is an adult rather than a minor. In rejecting that argument, the court had this to say:

> The statute requires mens rea, that is, a guilty mind. The guilt arises from the defendant's knowledge of what he intends to do. In this case, knowledge is subjective—it is what is in the mind of the defendant. Thus, a jury could reasonably infer that Meek knowingly sought sexual activity, and knowingly sought it with a minor. That he was mistaken in his knowledge is irrelevant. Meek possessed the guilty mind required by the statute.
>
> Meek's crime was an attempted violation of § 2422(b). The attempt provision of this statute underscores Congress's effort to impose liability regardless of whether the defendant succeeded in the commission of his intended crime. It would be contrary to the purpose of the statute to distinguish the defendant who attempts to induce an individual who turns out to be a minor from the defendant who, through dumb luck, mistakes an adult for a minor. To hold otherwise would bestow a windfall to one defendant when both are equally culpable.

*United States v. Meek*, 366 F.3d at 718.

The court then analogized the attempt provision in § 2422(b) with the attempted solicitation of prostitution, where the criminal conduct is the knowing effort to solicit an individual for prostitution. "That the individual turns out to be a decoy undercover officer does not vitiate the criminal conduct—indeed, such sting operations are 'common practice.' " *Id.* at 719, quoting *Rodriguez v. Panayiotou*, 314 F.3d 979,

984 (9th Cir.2002). In addition, such an interpretation of the statute would prevent law enforcement officers from effectively policing the illegal inducement of minors for sex. "Taking such a restrictive view of the statute would frustrate its purpose.... The fact that Meek was mistaken in his belief that he was corresponding with a minor does not mitigate or absolve his criminal culpability; the simple fact of Meek's belief is sufficient as to this element of a § 2422(b) violation." *United States v. Meek,* 366 F.3d at 719, 720.

The reasoning of *Meek* was adopted by the Ninth Circuit with respect to both § 2422(b) and § 2423(b) in an unpublished opinion, *United States v. Vail,* 2004 WL 1257695 (9th Cir., June 7, 2004). *See also United States v. Munro,* 394 F.3d 865 (10th Cir.) (court of appeals affirmed conviction for attempt provision of § 2422(b) when facts of the case included an adult undercover officer posing as a 13–year–old girl on the internet), *cert. denied,* —— U.S. ——, 125 S.Ct. 1964, 161 L.Ed.2d 790 (2005).

The case law is clear that an actual minor is not necessary to charge or convict for the attempted violation of § 2422(b) or § 2423(b).

Although the Ninth Circuit in *Meek* referred to Congressional intent by stating that the attempt provision of the statute underscores Congress's effort to impose liability regardless of whether the defendant succeeded in the commission of his intended crime, that court did not specifically set out any of the legislative history of the statute.

Congressional intent was the argument behind the motion for judgment of acquittal in the *Helder* case in the Western District of Missouri. In that case the defendant argued that in 1998 Congress refused to pass an amendment to § 2422 which would have specifically stated that it is no defense that the person enticed was an adult posing as a minor rather than an actual minor. The defendant argued that Congress's intent with respect to the original statute, therefore, must be that an actual minor is necessary for a conviction under that statute. The district court agreed with defendant and, bound by Congress's action (or rather, inaction), dismissed the indictment in *Helder* since the government had not proven an actual minor was involved.

Subsequent to the court's decision in *Helder,* the government obtained a copy of the Congressional debate surrounding the 1998 proposed amendment. The relevant language follows:

The original House bill would also have criminalized certain conduct directed at a person who had been "represented" to be a minor, even if that person was, in fact, an adult. The evident purpose was to make clear that the targets of sting operations are not relieved of criminal liability merely because their intended victim turned out to be an undercover agent and not a child. The new "sting" provisions addressed a problem that simply does not currently exist: No court has ever endorsed an impossibility defense along the lines anticipated by the House bill. The creation of special "sting" provisions in this one area could unintentionally harm law enforcement interests by lending credence to impossibility defenses raised in other sting and undercover situations. At the same time, these provisions would have criminalized conduct that was otherwise lawful: It is not a crime for adults to communicate with each other about sex, even if one of the adults pretends to be a child. Given these significant concerns, the "sting" provisions have been stricken from the House Leahy–DeWine substitute.

144 Cong. Rec. S12257-01, 1998 WL 701518 (Cong.Rec.), Congressional Record—Senate, Proceedings and Debates of the 105th Congress, Second Session, Friday, October 9, 1998.

■ From the Congressional debate, I believe that Congress did not refuse to criminalize attempting to entice a minor to engage in sex when an adult undercover officer is posing as a minor, and Congress's intent with respect to the original statute is to criminalize attempting to entice a minor to engage in sex even when an adult undercover officer is posing as a minor. Congress refused to pass the 1998 proposed amendment because no court had ever interpreted the statute to allow this conduct when an adult undercover officer was posing as a minor, and fixing something that was not "broken" may put into jeopardy other statutes which use similar sting operations but do not have this explicit statement regarding sting operations. For example, a criminal defendant could have argued that in any statute where Congress had not explicitly stated that it is not a defense where there was a sting operation, the defense of legal impossibility would apply. The reasoning would be that if Congress said it in one statute, then any statute where Congress did not specifically say that impossibility is not a defense must mean that it is indeed a defense.

Defendant relies heavily on the *Helder* opinion in support of his motion. Although the court did dismiss the indictment in that case because there was no proof of an actual minor, this was done before the government uncovered the transcript revealing Congress's true intent with respect to that proposed amendment and the statute as written at the time. Perhaps armed with that additional information, the court would have reached a different conclusion in the *Helder* case. As it stands now, having been presented with the Congressional debate, I respectfully disagree with the reasoning in the *Helder* case and decline to apply that case here.

I find that Congress intended to criminalize an attempt to entice a minor to engage in sex, even when the "minor" is actually an adult undercover law enforcement officer.

■ Defendant also argues that his case is one of legal impossibility.

■ To constitute a defense to an attempt prosecution, the circumstances must be such as to render successful completion of the crime legally impossible rather than merely factually impossible. "Factual impossibility refers to those situations in which a circumstance or condition, unknown to the defendant, renders physically impossible the consummation of his intended criminal conduct. Thus, the oft-reciting example of the would-be thief who attempts to pick an empty pocket. Legal impossibility refers to those situations in which the intended acts, even if successfully carried out, would not amount to a crime. Thus, attempt is not unlawful where success is not a crime, and this is true even though the defendant believes his scheme to be criminal." *United States v. Frazier*, 560 F.2d 884, 887 (8th Cir.1977) (citations omitted), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978).

In this case, legal impossibility does not exist, only factual impossibility, which is not a defense to these attempt charges. Neither is factual impossibility grounds for dismissing an indictment.

Defendant attempts to distinguish the pick-pocket example above by arguing that if the law criminalized stealing from a woman but not a man, and a person attempted to steal from a person he believed to be a woman but was really a man in disguise, he would not have broken the

law. Defendant has no case citation to support such an argument, and I find that it is not sound.

■ The difference between factual and legal impossibility is that when something is legally impossible, the very thing the person intended to do is lawful, though he may believe it is not. Factual impossibility occurs when the objective of the defendant is proscribed by the criminal law but a circumstance unknown to the actor prevents him from bringing about that objective. *United States v. Joiner*, 418 F.3d 863 (8th Cir.2005), citing *United States v. Sobrilski*, 127 F.3d 669, 674 (8th Cir.1997), *cert. denied*, 522 U.S. 1152, 118 S.Ct. 1175, 140 L.Ed.2d 184 (1998). In *Joiner*, the defendant was in prison after having been convicted of drug charges. The defendant created and filed false UCC financial statements with the secretary of state's office against real property owned by the judge and prosecutor in his drug case. His objective was to place a lien on the real property of the "alleged debtors". He claimed his actions, even if fully carried out as desired, would not constitute a crime because of the UCC's inapplicability to real property. The Eighth Circuit rejected that argument: "Despite his contentions ... his objective if fully carried out as desired would be prohibited by law because he had no right to place liens on the real property of the alleged debtors. Fortunately, a circumstance unknown to him, the UCC's inapplicability to real property, prevented him from bringing about his objective. His objective, therefore, was not legally impossible, but factually impossible."

In defendant's example, the person would have believed he was stealing from a woman, although he was not. That is factual impossibility, not legal impossibility. As in the pick-pocket example, the person believed he was going to steal money from a pocket, when in fact he could not because

the pocket was empty. Had it been as he believed (i.e., full of money), the crime would have been completed. In defendant's example, he believed he was going to steal from a woman (which is against the law), when in fact he could not because the victim was truly a man. Had it been as he believed (i.e., the victim had been a woman), the crime would have been completed. On the other hand, if John Doe believes that it is unlawful to tear a phone book and he rips a page out of his own home telephone book, then even though he believes he has committed a crime, he has not. Hence, legal impossibility.

In this case, defendant believed he was masturbating on a web cam while two minor girls were watching. He believed he was conversing with two minor girls and their mother on the internet, convincing them all to engage in sex with him at a motel. Defendant traveled in interstate commerce believing he was going to meet a woman and her two minor daughters for sex. Defendant's objective was proscribed by law, but a circumstance unknown to him prevented him from bringing about that objective. The circumstance unknown to him, of course, was that he was conversing with an undercover officer.

## V. CONCLUSION

I find that each count of the indictment contains the elements of the offenses charged and fairly informs the defendant of the charges against which he must defend; that all counts of the indictment contain sufficient information to allow defendant to plead double jeopardy; that the lack of an actual minor is not grounds for dismissing any count of this indictment; and that the defense of legal impossibility does not apply here. Therefore, it is

RECOMMENDED that the court, after an independent review of the pleadings and applicable law, enter an order denying

the defendant's motion to dismiss the indictment based upon legal impossibility.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of receipt of a copy of this report and recommendation to file and serve specific objections.

August 25, 2005.