UNITED STATES of America, Plaintiff–Appellee,

v.

Jeffrey MEEK, Defendant–Appellant.

No. 03–10042.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 2004.

Filed April 19, 2004.

Paul B. Meltzer, Santa Cruz, CA, Tim Brosnan, Oakland, CA, for the appellant.

Kevin V. Ryan, United States Attorney, Hannah Horsley, Assistant United States Attorney, and Kimberly M. Briggs, Assistant United States Attorney, Oakland, CA, for the appellee.

Before: WALLACE, NOONAN, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

Jeffery Meek entered a conditional guilty plea to one count of using the Internet to attempt to induce a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). At issue on appeal is whether the district court erred in denying Meek's motions to suppress evidence and to dismiss the indictment. Meek challenges the legality of the search of his records at America Online ("AOL"), whose Internet services Meek used, as well as the search of his home, computer, and vehicle. We also consider whether § 2422(b) applies where the person believed to be a minor is actually an adult police detective posing as the minor and, if so, whether the statute is unconstitutional. We reject these challenges and affirm the conviction. Both search warrants were valid, an attempt conviction under § 2422(b) does not require an actual minor victim, and the statute is constitutional as applied to Meek.

## FACTUAL BACKGROUND

In early 1999, Detective Lewis Doty of the Walnut Creek Police Department and Detective Steve McEwan of the San Jose Police Department began a joint investigation into child exploitation following the discovery of photographs of a local 14-year-old boy engaged in sexual acts. Through cooperative efforts, the officers were able to locate and interview the boy and his father. The boy told the detectives that the photographs were taken during a sexual encounter with a man who contacted him in an Internet chat room.

Upon learning of the situation, the victim's father allowed the detectives to transport the family computer to the police department for further investigation. During this initial meeting, the father provided oral permission to access his son's AOL account, and the boy provided the detectives with the password. Two weeks later, the father gave the detectives written permission to use his son's AOL account and to assume the son's identity in instant messenger [1] conversations.

Upon accessing the family computer, McEwan discovered that the boy had a profile on the AOL service listing personal information, such as location, gender, and interests. The boy listed his birthdate as "198?hmmm whats the last number?",[2] in-

---

[1] The term "instant messenger," like Internet "chat rooms," refers to a type of Internet service that enables users to engage in real-time dialogue "by typing messages to one another that appear almost immediately on the others' computer screens." *Reno v. ACLU*, 521 U.S. 844, 851–52, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

[2] Because Internet communication can often be informal, involving typographical errors, symbols, shorthand, and abbreviations, we

dicating that he was between 10 and 19 years of age. This profile was available to other AOL users.

Shortly thereafter, using the boy's Internet account, McEwan received an e-mail from someone with the screen name[3] "Capnjeffry," who was listed in the boy's AOL instant messenger "Buddy List."[4] In this e-mail, Capnjeffry indicated that he had communicated with the boy in the past, stated that he would "still be interested in hooking up some time," and provided his phone number. McEwan did not respond. Two weeks later, after McEwan received written permission to pose as the boy in AOL chats, Capnjeffry again contacted the boy by initiating an instant messenger conversation. At the outset of the conversation, McEwan—posing as the boy—cautioned that he was not free to chat because his parents were "kinda watching." Capnjeffry nevertheless proceeded to engage in a sexually graphic conversation with McEwan, discussing the possibility of a future sexual encounter. When asked if he looked forward to an encounter, Capnjeffry answered affirmatively, stating he wanted to see the boy's "smooth chest," describing sexual acts, and explicitly referring to the minor as "a young b."

Following this conversation, Doty obtained a warrant to search AOL's records for information regarding several instant messenger users, including Capnjeffry, who had contacted the boy for sex. AOL informed the detectives that the screen name "Capnjeffry" belongs to defendant Jeffery Meek. Further investigation revealed that, as a juvenile, Meek was convicted of violating California Penal Code § 288(a), committing a lewd or lascivious act on a child under 14 years of age. McEwan then interviewed the victim again, who said that Meek first contacted him a few months earlier for the purpose of having a sexual encounter and that Meek knew his age.

Over the course of the next month, McEwan and Meek had several additional conversations in which Meek continued to seek a sexual encounter with the boy. Their conversations revolved almost exclusively around the topic of sex, discussing in graphic detail sexual acts that Meek hoped to perform on the boy. At one point, Meek sent an e-mail to the boy's AOL account stating, "Want a pic of how I want to see you?"; attached was a picture of a naked male on a bed, the subject's anus the focal point of the photograph. The two also discussed the boy's lack of prior sexual experience, and Meek promised that their sexual encounter "will not hurt."

The instant messenger conversations also included references to the boy's age and circumstances. For example, McEwan told Meek that his parents would be out of town during the second week of April and that he would be alone. Meek responded by again asking the boy to meet, stating the he was "Looking to meet young handsome guys and see where

have not used "[sic]" to indicate every error or mistake in the original text.

**3.** "A screen name is an appellation used to identify oneself in a chat room or when sending instant messages to another computer user. Although it can be the user's real name, it is more often a pseudonym." *United States v. Mitchell*, 353 F.3d 552, 554 n. 3 (7th Cir.2003).

**4.** The term "Buddy List" refers to a window in the AOL instant messenger interface that lists correspondents the user designates as a "Buddy." "Buddy" status facilitates instant messenger communication by serving as an address book and by alerting users when certain designated individuals are online. *See* AIM Buddy List, *at* http://www.aim.com/help_faq/starting_out/buddylist.adp?aolp=.

things go. Sex, friends, talk." Additionally, McEwan mentioned keeping Meek's contact information in his locker at school, and Meek asked if the two could meet "Like after school on your way home." Meek also added, "I'm just getting nervous. I don't want to get set up for the police or anything."

After obtaining a search and arrest warrant, McEwan agreed to meet Meek at a local school for a sexual encounter. Meek was arrested when he arrived.

## ANALYSIS

### I. CHALLENGE TO VALIDITY OF THE SEARCH WARRANTS

As part of their investigation, the California detectives obtained two search warrants, one for AOL and the other for Meek's house and vehicle.[5] Both warrants listed the suspected offense to be a violation of California Penal Code § 311.3, but the attached affidavits described a violation of California Penal Code § 288.2.[6] We now address the validity of those warrants.

### A. THE AOL SEARCH WARRANT

■ Meek challenges the validity of the search of AOL's records, arguing that the affidavit in support of the warrant included illegally-obtained information and failed to establish probable cause, that the warrant was defective because it did not list the appropriate statute, and that the statute for which the magistrate issued the warrant is unconstitutional. We review de novo the district court's denial of defendant's motion to suppress. *United States*

*v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002).

### 1. CONSENT TO INTERCEPT INSTANT MESSAGES

■ Like private telephone conversations, either party to a chat room exchange has the power to surrender each other's privacy interest to a third party. *See United States v. Karo*, 468 U.S. 705, 726, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (While "[e]ach has standing to challenge the use as evidence of the fruits of an unauthorized search of that [exchange], ... either may also give effective consent to the search."). The nature of consent illustrates a reality of the Internet, namely, that a person initiating an Internet-based conversation does not control the recipient. *Cf. Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (holding that either party to a private telephone conversation may consent to electronic surveillance).

■ Meek's argument that the detectives' interception of the Internet conversations was illegal because it was conducted without any judicial monitoring misapprehends both the nature of an investigation and the significance of consent to monitor the exchanges. Because the minor and his father consented to the warrantless interception of Meek's messages to the minor, the affidavit in support of the warrant did not include illegally-obtained information. Before McEwan received or responded to Meek's messages, the minor provided his Inter-

---

**5.** 18 U.S.C. § 2422(b) criminalizes the inducement of minors to engage in "any sexual activity for which a person can be charged with a criminal offense." Liability under § 2422(b) is therefore contingent on criminal sexual activity as defined by another statute. In Meek's case, the criminal sexual activity was a violation of California Penal Code

§ 288.2, which criminalizes among other things, the sending of harmful matter to a minor over the Internet for the purpose of seduction.

**6.** Section 311.3 criminalizes the sexual exploitation of a child by means of producing, creating, or replicating child pornography.

net password to the detectives for the purpose of investigating cases of sexual abuse, and the father provided oral and written consent allowing the detectives to use the minor's screen name to conduct the sting investigation. The unilateral consent provided by the boy and his father was sufficient to overcome the objection to a warrantless search.[7]

## 2. PROBABLE CAUSE

■■■ The warrant clause of the Fourth Amendment requires "probable cause, supported by Oath or affirmation" to justify the issuance of a search warrant. U.S. CONST. amend. IV. We review for clear error a finding of probable cause for a search warrant. *United States v. Hay*, 231 F.3d 630, 634 n. 4 (9th Cir.2000). Our review is conducted with "great deference," *id.*, and the relevant inquiry is whether the magistrate had a "sufficient basis" for finding probable cause. *United States v. Weber*, 923 F.2d 1338, 1343 (9th Cir.1990). A "fair probability" is sufficient to establish probable cause. *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir.1988).

Meek makes a series of arguments about the validity of the warrant; in essence they boil down to a claim that Meek did not know his correspondent was a minor.[8] The affidavit included excerpts of a sexually graphic instant message in which Capnjeffry discussed the various sex acts he hoped to perform on the boy. Although the excerpted conversation did not include explicit mention of the boy's age, there were sufficient indications to establish a fair probability that Meek believed he was soliciting sexual activity from a minor. Meek was aware he was communicating with someone under significant parental supervision, asking the boy whether he would "be able to get away?" McEwan reinforced this understanding, warning that he was not free to talk because his "parents" were watching him. Meek also referenced the victim's "smooth chest," another indication that Meek believed he was speaking to a youth. Although these statements are by themselves ambiguous as to the age of the boy, together, the comments raise the inference that Meek believed he was corresponding with a minor.

Doty's expert opinion also bolstered the finding of probable cause. *See id.* ("In making [a determination of probable cause], the magistrate may consider expert opinion.") The application for the warrant included Doty's opinion as a veteran sex crimes investigator that pedophiles generally maintain contact information of people

**7.** To the extent that Meek invites us to consider the privacy interest a child might have in his online identity, we decline. As a third party, Meek does not have standing to raise an invasion of privacy claim on behalf of the minor. *See Rakas v. Illinois*, 439 U.S. 128, 132, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Alderman v. United States*, 394 U.S. 165, 171–72, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

**8.** We are unconvinced by Meek's assertion that there was not probable cause because, as Meek interprets the statute, instant messenger conversations are not considered "matter" under California Penal Code § 288, the statute contemplated in the search warrant. Meek's interpretation is foreclosed by the plain language of the statute. Section 288 criminalizes the transmission of "harmful matter" to minors, and "harmful matter" is defined to include "printed or written material." Further, § 288.2(b) specifically prohibits the distribution of harmful matter "by electronic mail, the Internet, .... or a commercial online service." Cal.Penal Code § 288.2(b). Instant messenger conversations are both written and distributed over the Internet, and would therefore be included as "matter" under § 288. Because there was reason to believe Meek knew he was sending these instant messages to a minor, the magistrate had probable cause to believe that this matter was "harmful."

with similar sexual interests and share the names of their child victims with other pedophiles for the purpose of finding new victims. Doty further stated that, in his experience as an investigator, persons who molest children will often "communicate with intended victims by computer in an attempt to lure that child into a sexual encounter." Meek's persistent solicitation of a sexual encounter with a known victim of child molestation was consistent with this behavior profile.[9]

The combination of the instant messenger transcripts, the boy's statements, and the expert opinion provide the requisite "fair probability" that Meek knowingly solicited sexual activity from a minor. Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. *Illinois v. Rodriguez*, 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).[10]

### 3. SPECIFICATION OF STATUTE IN WARRANT

■ Related to the issue of probable cause is whether the AOL warrant is invalid simply because the statute Meek violated—California Penal Code § 288.2(b)—differed from the statute listed in the affidavit—California Penal Code § 311.3. We

conclude that it is not. Because the affidavit established probable cause as to a violation of California law and the items sought under the warrant corresponded to that probable cause determination, the statutory variance in the affidavit is not fatal to the warrant's validity. *See United States v. Koyomejian*, 970 F.2d 536, 548 (9th Cir.1992) (Kozinski, J., concurring) ("I am aware of no constitutional requirement that an applicant for a warrant specify, and the judge determine, the precise statute violated; all authority is to the contrary."), *cited with approval in United States v. Hill*, 55 F.3d 479, 481 (9th Cir. 1995).

### 4. CHALLENGE TO CONSTITUTIONALITY OF CALIFORNIA PENAL CODE § 288.2

Part and parcel of Meek's challenge to the warrant is the claim that § 288.2,[11] the California statute covering Meek's alleged criminal activity, is unconstitutional under the First Amendment. Meek urges us to reverse the denial of the motion to suppress evidence because of this alleged infirmity. We decline to reach the constitutional question. Even if § 288.2 suffers from the claimed constitutional infirmity, Meek would not be entitled to the relief he

9. Portions of the expert affidavit appear to be boilerplate descriptions and were singularly unhelpful in establishing probable cause, as the testimony related to child pornography and child prostitutes. Incorporation of generic descriptions, however, do not undermine the portions of the affidavit related to the specific suspect and crime.

10. We note that the information sought in the AOL search is merely the name of the individual associated with a screen name. Screen names are unique and correspond to a single AOL account. By knowing Meek's screen name, law enforcement officers were already aware of one form of his identity, an essentially verifiable alias.

11. California Penal Code § 288.2(b) provides:

Every person who, with knowledge that a person is a minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by electronic mail, the Internet, as defined in Section 17538 of the Business and Professions Code, or a commercial online service, any harmful matter, as defined in Section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent, or for the purpose of seducing a minor, is guilty of a public offense and shall be punished by imprisonment in the state prison or in a county jail.

seeks.[12]

■ It is well established that suppression of evidence is not an appropriate remedy where an officer executes a warrant he reasonably believed to be valid. *See Illinois v. Krull,* 480 U.S. 340, 349–50, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). The cost of second-guessing is too high. *See United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

■ This exception to the exclusionary rule, as Meek correctly notes, does not apply if the officers acted pursuant to a statute that a reasonable officer should have known was unconstitutional. *See Krull,* 480 U.S. at 355, 107 S.Ct. 1160. At the time of the investigation, however, the constitutionality of § 288.2 had not been addressed by the courts, and there was no analogous precedent that could arguably have put an officer on notice that the statute might be unconstitutional.

For example, although the Supreme Court had considered the constitutionality of two provisions of the Communications Decency Act for its failure to define terms "obscene or indecent" and "patently offensive," *Reno v. ACLU,* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), that ruling did not clearly implicate the provisions of § 288.2, which incorporates by reference a detailed definition of the term "harmful matter." *See* Cal.Penal Code § 313(a) (defining "harmful matter" as "matter, taken as a whole, which to the average person, applying contemporary state-wide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and

which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors"). Given the state of the law at the time of the search, it was not unreasonable for an officer to rely on a warrant issued for a suspected violation of § 288.2.

As an additional matter, we note that the California Courts of Appeal have now twice upheld the constitutionality of § 288.2 against similar challenges. *See Hatch v. Superior Court,* 80 Cal.App.4th 170, 197, 94 Cal.Rptr.2d 453 (2000); *People v. Hsu,* 82 Cal.App.4th 976, 99 Cal.Rptr.2d 184 (2000). It would be curious indeed to apply the exclusionary rule to a search under a statute whose constitutionality has been subsequently affirmed by the state court. We therefore conclude that the officers reasonably relied upon the validity of § 288.2, and the district court did not err in denying Meek's motion to suppress.

## B. THE HOUSE AND VEHICLE SEARCH WARRANT

Meek also contests the search of his home and vehicle, claiming that the second warrant lacked sufficient specificity, that the affidavit in support of the warrant was recklessly misleading, and that the officers unreasonably relied on an allegedly unconstitutional statute.[13] We disagree. The second search was valid and the district court did not err in denying Meek's motion to suppress.

### 1. SUFFICIENT SPECIFICITY

The warrant to search Meek's home and vehicle listed numerous items related to the seduction and exploitation of children: sexually explicit material or paraphernalia

---

**12.** Meek makes the identical argument with respect to the second warrant. For the same reasons articulated here, the fact that the warrant was issued pursuant to § 288.2 does not invalidate the warrant.

**13.** Our conclusion that the first warrant was valid forecloses Meek's claim that evidence discovered as a result of the second warrant should have been suppressed as fruit of the poisonous tree, namely, the first warrant.

used to lower the inhibition of children, sex toys, photography equipment, child pornography, as well as material related to past molestation such as photographs, address ledgers including names of other pedophiles, and journals recording sexual encounters with children. Because the suspected commission of this crime involved the use of the Internet, the warrant also included computer equipment, information on digital and magnetic storage devices, computer printouts, computer software and manuals, and documentation regarding computer use.

The question we address is whether the degree of detail and specificity met the particularity rule of the Fourth Amendment's Warrant Clause. Requiring specificity serves a dual purpose. First, the requirement prevents fishing expeditions, limiting searches to the suspected criminal activity. Second, specificity "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, —— U.S. ——, 124 S.Ct. 1284, 1292, 157 L.Ed.2d 1068, 1080 (2004); *see also Weber*, 923 F.2d at 1342 ("The particularity rule requires the magistrate to make sure that the warrant describes things with reasonable precision, since vague language can cause the officer performing the search to seize objects on the mistaken assumption that they fall within the magistrate's authorization.") (internal quotations omitted). Without a sufficiently specific warrant, we consider the search warrantless. *See Groh*, —— U.S. ——, 124 S.Ct. at 1290, 157 L.Ed.2d 1068.

■ Applying the factors relevant to specificity, we conclude that the warrant is sufficiently specific. *See United States v. Wong*, 334 F.3d 831, 836–37 (9th Cir.2003); *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986) (setting out factors for determining whether a warrant is sufficiently specific, including the presence of probable cause, objective guidance for the execution of the search, and adequate specificity when the warrant was issued).

As an initial matter, this second warrant was a companion to the warrant for the AOL search, a warrant that was supported by probable cause. It therefore follows that the second warrant, which included even more extensive evidence of the Internet exchanges and of a violation of California Penal Code § 288, was also supported by probable cause.

The warrant also provided the officers with objective guidance in their search because all items listed in the warrant were limited to materials related to "sexual exploitation of a child." Unlike the circumstances before us in *United States v. Kow*, 58 F.3d 423 (9th Cir.1995), the warrant here did not authorize "the seizure of virtually every document and computer file" without indicating how items were related to the suspected crime. *Id.* at 427. Instead, the more analogous case is *United States v. Hay*, where we rejected a similar challenge and upheld the validity of a search of computer equipment and files. In *Hay*, the defendant objected to the seizure of his entire computer system in a child pornography investigation because the warrant failed to reference "child pornography or any particular offense conduct [and was not] narrowed by specific acts, time frames or persons." *Hay*, 231 F.3d at 636–37. Distinguishing *Kow*, we held the warrant was sufficiently particular because the attachment to the warrant mentioned the crime of child pornography and the preface to the warrant limited the scope of the search to evidence of criminal activity. *Id.* at 638. *See also Rabe*, 848 F.2d at 997–98 (upholding warrant for materials depicting minors in sexually explicit acts). Similarly, in the present case,

the warrant's authorization to search Meek's computer equipment, computer generated printouts, data storage devices, and documentation of computer hardware was limited to the search for evidence of child exploitation explicitly described in the supporting affidavit, and the preface of the warrant constrained the search to felony sexual activity involving minors. The terms of the warrant therefore provided law enforcement officers with objective and adequate guidance to execute their search.

■ Finally, the government provided a reasonably detailed description of the items to be seized. The prohibition of general searches is not to be confused with a demand for precise ex ante knowledge of the location and content of evidence related to the suspected violation. The proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation. *See United States v. Lacy,* 119 F.3d 742, 746 (9th Cir.1997). Thus, for example, the Supreme Court in *Groh* held invalid a search executed pursuant to a warrant that merely described the house to be searched without listing the actual items to be seized or attaching an affidavit with that information, even though law enforcement officers were aware of more particular details. *Groh,* — U.S. —, 124 S.Ct. at 1290, 157 L.Ed.2d 1068. In contrast, the warrant issued for the search of Meek's home and vehicle specifically referred to items related to the sexual exploitation of children, describing those items with as much precision as possible. In light of these factors, it is easy to conclude that the warrant to search Meek's house and vehicle meets the particularity requirement of the Fourth Amendment.

## 2. *FRANKS* HEARING

The district court denied Meek's request for an evidentiary hearing under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). As a threshold matter, we consider whether the law enforcement officer's affidavit in support of the second warrant contained "a deliberately or recklessly false statement," *id.* at 165, 98 S.Ct. 2674, thus undermining the magistrate's finding of probable cause.

■ This inquiry begins with a presumption that an affidavit in support of a search warrant is valid. *Id.* at 171, 98 S.Ct. 2674. A *Franks* hearing is appropriate only if Meek can make a substantial preliminary showing that a false statement was deliberately or recklessly included in or omitted from a warrant affidavit, and that the false statements or omissions were material to the finding of probable cause. *See United States v. Fisher,* 137 F.3d 1158, 1164 (9th Cir.1998). We review de novo a district court's denial of a *Franks* hearing, and review for clear error the district court's underlying finding that the government did not intentionally or recklessly make false statements. *United States v. Shryock,* 342 F.3d 948, 975 (9th Cir.2003). Because Meek fails to show that the statements he challenges were intentionally or recklessly misleading, or that the statements were material, we hold there was no error in the district court's denial of a *Franks* hearing.

■ Meek first claims the affidavit intentionally or recklessly misled the magistrate by stating that Meek sent the minor a sexually graphic photograph of a "young boy" when, according to another officer, the photograph was of male of indeterminate age. This claimed discrepancy is a difference of opinion. One officer thought the photograph was of a young boy, and the other officer did not put an age on the subject. Although the characterization of

the photograph was at worst an exaggeration, and more realistically a difference in perception, it makes no difference here whether the photograph depicted a minor or an adult. The mere act of sending a sexually graphic photograph to a person believed to be a minor for the purposes of inducing the minor into a sexual act established probable cause of a violation of California Penal Code § 288.2, the statute specified in the supporting affidavit. Thus, even if the description in the affidavit was made recklessly, Meek cannot demonstrate that the comment was material to the finding of probable cause.

 Equally unconvincing is Meek's assertion that the government recklessly misled the magistrate regarding Meek's knowledge of the minor's age. According to Meek's trial counsel, when asked if Meek knew his age, the minor simply answered affirmatively; in comparison, the affidavit in support of the warrant stated the minor informed Meek of his age. According to either account, the substantive evidence was the same, the only variation being the strength and nuance of the boy's affirmance and the officer's declaration. But again, even if the statement was recklessly made, the difference was not material to the finding of probable cause. Both versions revealed the same damaging information—that Meek knew he was corresponding with a minor, a fact that established an element of criminal liability.

Significantly, the magistrate had before him substantial evidence to establish probable cause, and neither statement can be characterized as material in tipping the balance on the probable cause decision. Because Meek is unable to demonstrate

either threshold requirement, the district court did not err in denying Meek's request for a *Franks* hearing. *See Shryock,* 342 F.3d at 977.

## II. THE SCOPE AND APPLICATION OF § 2422(b)

A conviction for an attempt to induce a minor to engage in sexual activity in violation of § 2422(b) requires, among other things, the knowing persuasion, inducement, enticement, or coercion of an "individual who has not attained the age of 18 years." There is no dispute that the boy Meek attempted to contact was under 18 years old, and that, assisted by the anonymity of the Internet, a detective—an adult—stood in the shoes of the boy in their instant messenger conversations.

Meek submits that § 2422(b) does not apply when the actual victim is an adult rather than a minor, and that an interpretation to the contrary renders the statute unconstitutional because it would chill legitimate communication between adults. This case presents the first opportunity for us to address whether the attempt provision of § 2422(b) requires the involvement of an "actual minor."

### A. "ACTUAL MINOR"

The question we consider is whether § 2422(b) imposes criminal liability when the defendant believes he is inducing a minor, but the object of his inducement is really an adult.[14] We join our sister circuits in concluding that "an actual minor victim is not required for an attempt conviction under 18 U.S.C. § 2422(b)." *United States v. Root,* 296 F.3d 1222, 1227 (11th Cir.2002) (holding that "belief that a

14. Meek frames the issue differently and posits that § 2422(b) does not impose criminal liability when the intended correspondent is an adult. This manner of phrasing the issue gracefully avoids the difficult question. We

agree that the non-obscene inducement of one adult into consensual sexual activity with another individual known or believed to be an adult is not within the reach of § 2422(b). The issue here, however, is a different one.

minor was involved is sufficient to sustain an attempt conviction under 18 U.S.C. § 2422(b)"); *United States v. Farner*, 251 F.3d 510, 513 (5th Cir.2001) (legal impossibility normally not a defense to an attempt to violate § 2422(b)); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) (attempt provision of § 2422(b) constitutional because the restriction "does not infringe on any constitutionally protected rights of adults"), *cert. denied*, 532 U.S. 1009, 121 S.Ct. 1737, 149 L.Ed.2d 661 (2001).

■ Our starting point is the text of the statute itself. We "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *Carson Harbor Vill. Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir.2001) (en banc); *see also Duncan v. Walker*, 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (interpreting the Endangered Species Act by looking first to the text of the statute, then the broad purpose, then its implementing structure).

Section 2422(b) reads:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so,* shall be fined under this title, imprisoned not more than 15 years, or both (emphasis added). (2002)

From the text of the statute, the elements of criminal liability are manifest: a person must "knowingly" (1) actually or attempt to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense. Following our canons of statutory interpretation, it is apparent that the term "knowingly" refers both to the verbs—"persuades, induces, entices, or coerces"—as well as to the object—"a person who has not achieved the age of 18 years." *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) ("the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct."); *Staples v. United States*, 511 U.S. 600, 616, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).

■ The statute requires mens rea, that is, a guilty mind. The guilt arises from the defendant's knowledge of what he intends to do. In this case, knowledge is subjective—it is what is in the mind of the defendant. Thus, a jury could reasonably infer that Meek knowingly sought sexual activity, and knowingly sought it with a minor. That he was mistaken in his knowledge is irrelevant. Meek possessed the guilty mind required by the statute.

■ Meek's crime was an attempted violation of § 2422(b). The attempt provision of this statute underscores Congress's effort to impose liability regardless of whether the defendant succeeded in the commission of his intended crime. It would be contrary to the purpose of the statute to distinguish the defendant who attempts to induce an individual who turns out to be a minor from the defendant who, through dumb luck, mistakes an adult for a minor. To hold otherwise would bestow a windfall to one defendant when both are equally culpable.

The attempt provision here is no different than an attempted solicitation of pros-

titution, where the criminal conduct is the knowing effort to solicit an individual for prostitution. That the individual turns out to be a decoy undercover officer does not vitiate the criminal conduct—indeed, such sting operations are "common practice." *Rodriguez v. Panayiotou,* 314 F.3d 979, 984 (9th Cir.2002).

So too have undercover officers been forced to resort to extensive investigation and sting operations to ferret out pedophiles who troll the Internet for minors. As Meek interprets the statute, detectives and undercover officers would be unable to police effectively the illegal inducement of minors for sex. Taking such a restrictive view of the statute would frustrate its purpose. Indeed, police preventative measures such as the sting operation conducted here would come at the cost of either rarely securing a conviction or putting an actual child in harm's way. In that scenario, the child molester gains at the tremendous expense of the child, a result sharply at odds with the statute's text and purpose. In declining Meek's interpretation, we opt for the integrity of the statute as a whole.

 To support his interpretation that § 2422(b) does not include liability resulting from sting operations, Meek points to two pieces of legislative history: the 1998 amendment adding an attempt provision to § 2422(a) and a proposed amendment to § 2422 that was not part of the final amendments adopted in 1998. We need not factor in legislative history because the meaning of the statute is clear from the text. *See Lamie v. United States Tr.,* —— U.S. ——, 124 S.Ct. 1023, 1031, 157 L.Ed.2d 1024 (2004); *see also Halaim v. INS,* 358 F.3d 1128, 1134 (9th Cir.2004). Although on occasion we reference legislative history to provide background consis-

tent with our interpretation of the statute, we note that the legislative history offered by Meek is ambiguous and unpersuasive. *See Carson Harbor Vill.,* 270 F.3d at 877 (approving resort to legislative history where legislative history "clearly indicates that Congress meant something other than what it said."). Because Meek relies so heavily on legislative history, we reference it here simply to underscore why it does not figure into our statutory analysis.

Meek first cites the House Judiciary Committee's notes indicating that the purpose of adding the attempt provision to § 2422(a) was to enable prosecution of "a defendant who attempts to lure individuals into illegal sexual activity, but where the travel did not take place (i.e., only an attempt occurred)." H.R.Rep. No. 105–557, at 21 (1998), U.S.Code Cong. & Admin.News 678, 690. That statement is true. Meek strains, however, to read this note to mean that Congress intended the attempt provision to apply to an element other than the victim's age. The difficulty with this argument is that § 2422(a) does not contain an age element, and therefore the Committee's failure to discuss age in its amendment to § 2422(a) is unremarkable.[15] We fail to see how the attempt provision in subsection (a) speaks to the age requirement in subsection (b).

Meek also points to an unadopted amendment that would have added a new subsection (c) making it a crime to "knowingly contact[ ] an individual, who has been represented to the person making the contact as not having attained the age of 18 years" for the purpose of engaging in sexual activity. 144 Cong. Rec. H.4500 (1998). Meek suggests that we should infer that, by not adopting this amendment, Congress specifically considered and rejected liabili-

---

**15.** 18 U.S.C. § 2422(a) criminalizes the actual or attempted persuasion of an individual to travel in interstate commerce to engage in prostitution or criminal sexual activity.

ty resulting from sting operations. Sorting through the dustbin of discarded legislative proposals is a notoriously dubious proposition. *See United States v. Craft,* 535 U.S. 274, 287, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) ("failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute.") (internal quotations omitted). For example, of equal significance was the Committee's view that sex offenders should be punished regardless of whether the contact was with a real minor:

It is the view of the Committee that law enforcement plays an important role in discovering child sex offenders on the Internet before they are able to victimize an actual child. Those who believe they are victimizing children, even if they come into contact with a law enforcement officer who poses as a child, should be punished just as if a real child were involved. It is for this reason that several provisions in this Act prohibit certain conduct involving minors and assumed minors.

H.R.Rep. No. 105–557, at 19.

Whether Congress meant to drive a point home or subtly alter the nature of the crime is pure speculation. Given the clarity of the text of the statute and the ambiguous nature of the legislative history, we see no reason to engage in the crude guesswork of eschewing the statute's plain language in favor of murky legislative history.

Applying our interpretation of § 2422(b), we observe that Meek's conduct fell squarely within our definition of criminal attempt. Consistent with the Fifth and Eleventh Circuits, our precedent counsels that an attempt conviction requires evidence that a defendant "intended to violate the statute" and "took a substantial step toward completing the violation." *United States v. Nelson,* 66 F.3d 1036,

1042 (9th Cir.1995); *see also Farmer,* 251 F.3d at 513; *Root,* 296 F.3d at 1227–28.

■ In his instant messenger conversations, Meek knowingly induced and enticed the boy to engage in sexual activity. As in *Root,* Meek believed that the boy was a minor. The boy told him his age, and the disguised detective explicitly dropped obvious clues as to age, such as parental supervision, discussion of school, and hiding Meek's contact information in his locker at school. Meek in turn referenced the boy's "smooth chest" and wanting to smell "the cum of a young b."

The evidence also confirms that Meek took a "substantial step" toward the commission of the crime. His extensive sexual dialog, transmission of a sexually-suggestive photograph, repeated sexual references as to what Meek would do when he met the boy, and his travel to meet the minor at a local school mark his conduct as criminal in nature.

In short, § 2422(b) criminalizes the attempt to induce a minor to engage in sexual activity, and Meek intended, and took steps toward, persuading or inducing a minor. That he did not succeed is of no consequence. The fact that Meek was mistaken in his belief that he was corresponding with a minor does not mitigate or absolve his criminal culpability; the simple fact of Meek's belief is sufficient as to this element of a § 2422(b) violation.

## B. FIRST AMENDMENT CHALLENGE

We now turn to Meek's as-applied challenge to § 2422(b). Piggybacking on his statutory construction argument, he claims that the statute is unconstitutionally overbroad under the First Amendment when applied to situations involving an actual adult. Meek contends that the Supreme Court's ruling in *Reno v. ACLU,* 521 U.S.

844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), requires the government to show not only that a defendant believed his victim to be a minor, but also that he was correct in his belief. According to Meek, a statute that criminalizes conduct such as his, where he wrongly believed that his target was a minor, unconstitutionally chills legitimate adult conduct.

Meek's argument is creative but unavailing. If the statute simply criminalized sexual communication with a minor regardless of the defendant's belief about the age of his correspondent, we would agree that § 2422(b) might be a closer analogue to the statute challenged in *Reno.* However, § 2422(b) is a substantively different statute, and we decline to construe it to create constitutional infirmities. *See INS v. St. Cyr,* 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988).

As an initial matter, we do not consider *Reno* to be controlling here. In *Reno,* the Supreme Court considered a statute that criminalized the publishing of "harmful matter" in any forum accessible to a minor, regardless of the intended audience. Under the statute, a provider of constitutionally protected content would be forced to cease publication upon learning that a minor could access the information, or else risk prosecution under the statute. *Reno,* 521 U.S. at 859–860, 117 S.Ct. 2329. According to the Court, this "heckler's veto" impermissibly burdened speech because the presence of a single minor amidst the sea of Internet users effectively terminated the ability to engage in otherwise legitimate speech. *Id.* at 880, 117 S.Ct. 2329.

█ In contrast, there is no otherwise legitimate speech jeopardized by § 2422 because the statute only criminalizes conduct, i.e. the targeted inducement of mi-

nors for illegal sexual activity. Here, speech is merely the vehicle through which a pedophile ensnares the victim. *See United States v. Rowlee, II,* 899 F.2d 1275, 1278 (2d Cir.1990) ("Speech is not protected by the First Amendment when it is the very vehicle of the crime itself."). Because "persua[ding] . . . a boy under the age of sixteen to engage in prostitution and other sexual acts for which a person could be charged with a criminal offense" comes closer to "incitement" than it does to general "advocacy," the statute does not run afoul of the First Amendment. *See Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 253, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) ("The government may suppress speech advocating . . . a violation of law . . . if 'such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.' "), *quoting Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam). The inducement of minors to engage in illegal sexual activity enjoys no First Amendment protection. *Bailey* at 639.

The potential for unconstitutional chilling of legitimate speech disappears because § 2422(b) requires the prosecution to prove that a defendant actually knows or believes that the specific target of the inducement is a minor. Although it would be grammatically correct to read the term "knowingly" to function only as an adverb modifying the verbs "persuades, induces, entices, or coerces," such an interpretation would disregard the general rule of "interpreting criminal statutes to include broadly applicable scienter requirements, even when the statute by its terms does not contain them." *X–Citement Video,* 513 U.S. at 70, 115 S.Ct. 464 (interpreting *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). Knowledge of the age of the person induced is

essential to the construction of § 2422(b) because, with few exceptions, the inducement of a person over the age of 17 into sexual activity is generally not illegal. Because we conclude that the term "knowingly," as it is used in § 2422(b), requires the defendant to know or believe that the person whom he seeks to induce into sexual activity is a minor, § 2422(b) does not infringe on legitimate speech between adults.

Importantly, § 2422(b) only attaches culpability if the government can prove that one of the parties in the conversation intended to target a minor for criminal sexual activity. That is, in prosecuting an alleged violation of § 2422(b), the government must prove both knowledge or belief that the person induced is a minor, and that the inducement was for the purpose of engaging in sexual conduct that is, by its own definition, criminal. The age and purpose clauses insulate from liability persons engaged in constitutionally permissible speech, such as sexually explicit conversations between two adults, because conversations of that nature would not involve the narrow category of criminal sexual activity with a minor. Meek overstates the potential for constitutional problems because the intent to engage in criminal sexual conduct—which does not enjoy First Amendment protection—is a crucial component of the criminal liability. Thus, applying § 2422(b) to cases involving an undercover agent does not render the statute overbroad under the First Amendment.

## CONCLUSION

We affirm Meek's conviction. The first and second warrants were based on probable cause and were sufficiently specific. Meek's additional challenges to the validity

of the search warrants and underlying state statute do not undermine the warrants. We further hold that the attempt provision of 18 U.S.C. § 2422(b) criminalizes the solicitation of an adult believed to be a minor. Because this interpretation requires proof of the defendant's belief that a minor is the target of the unlawful sexual activity, the statute as applied is not over-broad under the First Amendment.

**AFFIRMED.**