**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Jerry Lee GARNER, Defendant—
Appellant.**

No. 04–10064.
D.C. No. CR–03–00060–KJD.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 2004.

Decided Dec. 23, 2004.

Andrew Duncan, Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee.

Thomas C. Naylor, Law Offices of Thomas C. Naylor, Henderson, NV, for Defendant–Appellant.

Before O'SCANNLAIN, COWEN,* and BEA, Circuit Judges.

## MEMORANDUM**

Jerry Lee Garner appeals his judgment of conviction and sentence for two counts

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

of use of a social security number assigned to another person, in violation of 42 U.S.C. § 408(a)(7)(B), and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iv). He argues that the district court erred in not suppressing drug evidence recovered from the invalid search in violation of Fed.R.Crim.P. 41 and the Fourth Amendment of the U.S. Constitution; abused its discretion in failing to exclude or limit the introduction of destroyed evidence at trial; abused its discretion in refusing to conduct a hearing concerning whether exculpatory evidence was intentionally withheld from the search warrant affidavit; and that this Court's intervening decision in *United States v. Ameline,* 376 F.3d 967 (9th Cir.2004), requires remand for resentencing. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We will affirm the conviction and remand for resentencing.

## I.

Officers from the Las Vegas Metropolitan Police Department ("LVMPD") firearms unit, accompanied by Drug Enforcement Agents ("DEA") and joint task force officers, observed Garner enter and exit his apartment at 7001 West Charleston Boulevard, apartment 2028, Las Vegas, Nevada. Federal officers executed a federal arrest warrant for social security laws violations, and state officers executed a state search warrant at Garner's residence. Officers allowed Garner to witness a portion of the search. Before the search was concluded, federal officers transported Garner to appear before a federal magistrate pursuant to the federal social security arrest.

A Snapple bottle containing PCP was seized from the master bedroom closet, as was a plastic measuring cup. All evidence was seized, processed, tested, and main-tained by the LVMPD. The measuring cup was photographed and tested for latent fingerprints. It was not tested for drug residue. Pursuant to LVMPD policy and federal law, the Snapple bottle together with the remaining untested PCP and the measuring cup were destroyed. The government introduced evidence of the destroyed measuring cup at trial.

The search warrant affidavit relied primarily on two sources in support of probable cause. The first involved statements obtained from Tawana Wells during a state search of her residence. Detective Joseph Kelley of the LVMPD executed the search with other state officers and interviewed Wells. Among the items recovered during the search were rock cocaine, PCP, and various firearms. In addition, officers found a Cox Cable bill in the name of Ja'Vaughn Parker, which was subsequently determined to be an alias used by Garner. Wells told Detective Kelley that Parker was also known as J–Down, and that he had paid her to hold the PCP on his behalf.

The second source was a confidential informant. Detective Kelley learned from local drug task force officers that a confidential informant revealed to police that Garner, known to the informant as J–Down, was a member of a drug conspiracy. The informant provided a description of Garner, as well as the general location of Garner's apartment.

Through investigation, a task force officer pinpointed the location of Ja'Vaughn Parker's (a.k.a.J–Down) residence at 7001 West Charleston, number 2028. Surveillance of the apartment revealed a male fitting the description provided by the confidential informant entering and exiting the apartment. Officers also observed the same individual at the apartment and in a vehicle with Wells.

Detective Kelley's follow-up investigation with the Nevada Department of Motor Vehicles led to the issuance of a federal arrest warrant for Garner, a.k.a. Parker, for social security violations.

## II.

■ Garner asserts that the district court erred in denying his suppression motion because the search did not comport with Fed.R.Crim.P. 41(d).[1] Rule 41(f)(3), formerly Rule 41(d), commands that the officer taking property pursuant to the warrant must "(A) give a copy of the warrant and a receipt for the property taken from the person from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property." As explained fully below, the district court did not err in refusing to suppress the evidence seized from Garner's apartment because Rule 41 is inapplicable.

We exercise *de novo* review over the district court's order not to suppress evidence. *United States v. Gantt*, 194 F.3d 987, 1000 (9th Cir.1999). The underlying factual findings are reviewed for clear error. *Id.* The decision not to hold an evidentiary hearing on a motion to suppress is reviewed for an abuse of discretion. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir.2000).

Rule 41 " 'governs the standards and procedures to be observed in conducting federal searches.' " *United States v. Piver*, 899 F.2d 881, 882 (9th Cir.1990) (quoting *United States v. Searp*, 586 F.2d 1117, 1121 (6th Cir.1978)). The standards set forth in Fed.R.Crim.P. 41 do not apply to searches conducted by local officials unless the search is "federal in character." *See United States v. Crawford*, 657 F.2d 1041, 1046 (9th Cir.1981). Such a determination is factual. *United States v. Palmer*, 3 F.3d 300, 303 (9th Cir.1993). If a search is state in character, the warrant and affidavits need only conform to federal constitutional standards. *Piver*, 899 F.2d at 882.

We have observed that Rule 41 is not implicated by the mere fact that evidence seized pursuant to a search conducted by state law enforcement officials relying upon a warrant issued by a state judge for violations of state law is offered in a federal prosecution. *See id.; Crawford*, 657 F.2d at 1046 ("The mere fact that evidence obtained by state officers, under a state warrant, based upon [alleged] violations of state law, is used in a federal prosecution does not invoke the requirements of Rule 41."). In addition, it is clear that "the mere participation in a state search of one who is a federal officer does not render it a federal undertaking...." *Byars v. United States*, 273 U.S. 28, 32, 47 S.Ct. 248, 71 L.Ed. 520 (1927). In this Circuit, the touchstone of the "federal character" inquiry involves an assessment of whether a federal prosecution was contemplated from the outset. "Generally, a search is federal if from the beginning it was assumed a federal prosecution would result." *Palmer*, 3 F.3d at 303; *see United States v. Radlick*, 581 F.2d 225, 228 (9th Cir.1978) (holding that search was sufficiently federal as to require compliance with Rule 41 because, *inter alia*, state agent testified that it was assumed from the outset that the prosecution would probably be in federal court and after agents discovered defendant Baker's participation, it was known that a federal prosecution would ensue).[2]

---

1. Fed.R.Crim.P. 41(d) has been subsequently moved to Fed.R.Crim.P. 41(f)(3), effective December 1, 2002.

2. *See also United States v. Burke*, 517 F.2d 377, 379, 382–84 (2d Cir.1975) (holding that search warrant submitted on state forms and issued by state judge is subject to strictures of

The district court did not decide whether there was sufficient federal involvement in the search of Garner's apartment to trigger application of Rule 41. Instead, it assumed *arguendo* that Rule 41 governed for the purposes of deciding the motion before it. Significantly, however, the court determined that there was no evidence in the record indicating that a federal prosecution was contemplated in the joint federal-state investigation of Garner's PCP activities. In light of the record and the additional factual findings made by the district court, this finding is tantamount to finding that the standards of Rule 41 do not apply, and is not clearly erroneous.

Federal agents played no significant role prior to the search, nor did state officers apply for the warrant at the urging of a federal officer. As found by the district court and reflected in the record, Detective J. Kelley of the LVMPD was the sole affiant on the state-issued search warrant that sought evidence of state law violations. The investigation of Garner arose from a search conducted exclusively by LVMPD officers on Tawana Wells' apartment. That search uncovered large amounts of drugs, firearms, and drug paraphernalia. Subsequent interviews conducted by Detective Kelley with Wells and Ronald Tillman, a male occupant of her apartment, revealed Garner's involvement with PCP distribution. It was the information developed by Detective Kelley that

led to a federal arrest warrant for Garner on the social security law violations.

Although the federal and state agents working together on a joint task force supplied information used by Detective Kelley to secure the state search warrant, the warrant authorized the search and seizure of evidence for controlled substances and related paraphernalia, not evidence regarding social security fraud. Federal and joint task force agents played a very limited role in the execution of the search. After arresting Garner on the federal arrest warrant, federal and joint task force agents secured Garner's residence. The LVMPD firearms unit subsequently entered and searched the unit. An LVMPD chemist conducted a field test on a substance that yielded positive results for PCP. Significantly, the LVMPD took immediate possession and control over the fruits of the search. All evidence seized at the scene was processed by the LVMPD, and it maintained all evidence pending the conclusion of the investigation. The record reveals that the investigation was continuing at the behest of the Las Vegas Gang Task Force.[3]

The district court found that nothing in the record indicated that a federal prosecution was contemplated prior to the search. That finding is not clearly erroneous. Accordingly, the search was not governed by Rule 41,[4] and the district court

Fed.R.Crim.P. 41(c) because affidavit and application were signed and sworn to by an agent of the Alcohol, Tobacco and Firearms division of the United States Treasury Department as well as two state officers and because the only crime alleged in the affidavit and application was a federal crime).

3. The situation presented here closely resembles that facing this Court in *Palmer*. In that case, we observed that the record reflected that local authorities initiated the investigation and furnished information to federal DEA agents, that the local authorities would

have sought the search warrant regardless of federal involvement, and that the United States had no intention of prosecuting the case before the search occurred. While acknowledging the participation of federal agents in the drafting of the warrant and search of the premises, we nonetheless held that the federal involvement in the search was not significant enough to render the search a federal one. *Palmer*, 3 F.3d at 302–03.

4. This conclusion obviates the need to address whether or not the court below abused its discretion in failing to hold an evidentiary

did not err in denying Garner's suppression motion.

## III.

◼ Garner next challenges the district court's refusal to exclude or limit the introduction of destroyed evidence at his trial. We review the district court's decision not to exclude destroyed evidence for an abuse of discretion. *United States v. Roberts,* 779 F.2d 565, 569 (9th Cir.1986).

The decision whether to admit criminal evidence that was lost or destroyed involves an assessment of the quality of the government's conduct and the degree of prejudice suffered by the accused. *United States v. Loud Hawk,* 628 F.2d 1139, 1152 (9th Cir.1979) (en banc) (Kennedy, J., concurring); *see also United States v. Belden,* 957 F.2d 671, 674 (9th Cir.1992). The government bears the burden of justifying its conduct and the accused bears the burden of demonstrating prejudice. *Loud Hawk,* 628 F.2d at 1152. Factors to be considered in analyzing the conduct of the government include

> whether the evidence was lost or destroyed while in its custody, whether the Government acted in disregard for the interests of the accused, whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification.

*Id.* In addition, "the nature and degree of federal participation" is important, as is "whether the government attorneys prosecuting the case have participated in the events leading to the loss or destruction of the evidence." *Id.* These considerations must be balanced against the degree of prejudice to the defendant. This entails

hearing regarding the merits of the alleged

an analysis of such factors as the centrality of the evidence to the case, the probative value and reliability of secondary or substitute evidence, and the probable effect on the jury from the absence of the evidence. *Id.*

The government introduced evidence of a measuring cup that was found in Garner's bedroom closet in close proximity to a bottle containing PCP. An analysis of the measuring cup by local authorities revealed a fingerprint that matched Garner's. The measuring cup was not tested for drug residue. It was destroyed at the direction of LVMPD officials pursuant to departmental policy and federal law because the cup was potentially contaminated with PCP, an extremely hazardous material. Garner was thus denied an opportunity to test the cup for an absence of drug residue. The bottle containing PCP as well as the unsampled portion of PCP were likewise destroyed. The government introduced testimony and photographs of the measuring cup and argued that it could be utilized to cut the drugs into smaller components for sale purposes.

The measuring cup, along with the unsampled portion of PCP and bottle, were destroyed pursuant to departmental policy and federal law, which require anything associated with or contaminated by PCP to be disposed of by a licensed chemical disposal contractor. In addition, state authorities were in possession and control of the measuring cup when it was destroyed. LVMPD crime lab personnel tested, fingerprinted, and ordered the destruction of the drug-related evidence. Neither federal agents nor prosecutors directed or participated in the destruction. Significantly, the measuring cup was not the government's primary evidence of Garner's intent to distribute PCP. Approximately $19,000

Rule 41 violation.

worth of PCP was found in a bottle in Garner's bedroom closet. An expert in drug trafficking opined that the amount of PCP recovered was consistent with distribution rather than personal use. Even if a test on the measuring cup revealed an absence of drug residue, this would not exonerate Garner. Garner was free to, and in fact did, cross-examine law enforcement agents regarding the government's destruction of and failure to test the measuring cup.

Under these circumstances, the district court did not abuse its discretion in declining to exclude evidence regarding the destroyed measuring cup.

### IV.

■ Garner's contention that the district court erred in denying his request for a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), is without merit. We review *de novo* a district court's denial of a *Franks* hearing, and review for clear error the district court's underlying finding that the government did not intentionally or recklessly make false statements in the search warrant affidavit. *United States v. Meek*, 366 F.3d 705, 716 (9th Cir.2004).

We begin by acknowledging that a presumption of validity attaches to the affidavit supporting the search warrant. *Franks*, 438 U.S. at 171. An evidentiary hearing is warranted only if Garner can make a "substantial preliminary showing that a false statement was deliberately or recklessly included in or omitted from a warrant affidavit, and that the false statements or omissions were material to the finding of probable cause." *Meek*, 366 F.3d at 716. Garner's challenge must be more than conclusory. He asserts that exculpatory evidence was intentionally withheld from the search warrant affidavit.

In addition to relying upon a confidential informant who described Garner, his location, and revealed that he played a role in the PCP conspiracy, the search warrant affidavit relied upon the statements of Tawana Wells to establish probable cause. As indicated in the affidavit, a search of Wells' apartment revealed drugs, drug paraphernalia, firearms, and a Cox Cable bill in the name of Ja'Vaughn Parker, an alias used by Garner. Wells stated that she was holding the PCP discovered in her apartment for Garner. The search warrant affidavit describes officers' observations of Wells at Garner's apartment. This established an affirmative, physical link between Wells and Garner.

In his request for an evidentiary hearing, Garner proffered his own testimony that he had been having sex with Wells numerous times following her arrest and that he believed she was being utilized as an undercover operative for law enforcement because she unsuccessfully attempted to purchase drugs from him on numerous occasions. Garner postulates that the detectives knew of this exculpatory information and failed to include it in the search warrant affidavit. He argues that this material omission renders the warrant invalid under *Franks*.

Significantly, aside from his conclusory proffer, Garner has not furnished any additional support for his claim that Wells was acting as an informant for the government. Garner's speculation that Wells was serving as an informant for the government is patently insufficient to satisfy his threshold burden under *Franks*. The district court did not err in denying Garner's request for a *Franks* hearing.

### V.

For the foregoing reasons, the judgment of conviction is affirmed. We remand to the district court for reconsideration of

Garner's sentence upon the Supreme Court's dispositions in *United States v. Booker,* 375 F.3d 508 (7th Cir.2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), and *United States v. Fanfan,* No. 03–47, 2004 WL 1723114 (D.Me. June 28, 2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004).

**REMANDED.**