**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10038 |
| Plaintiff-Appellee, | D.C. No. 3:16-cr-00210-WHA-1 |
| v. | |
| GEORGE VORTMAN, | **MEMORANDUM**[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Submitted January 8, 2020[**]
San Francisco, California

Before: W. FLETCHER and FRIEDLAND, Circuit Judges, and HILLMAN,[***]
District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Timothy Hillman, United States District Judge for the District of Massachusetts, sitting by designation.

Defendant-Appellant George Vortman appeals the district court's orders denying his motion to suppress evidence and motion to dismiss his indictment. Vortman argues that the government obtained evidence against him pursuant to a warrant that was issued in violation of Federal Rule of Criminal Procedure 41, and that was overbroad and not supported by probable cause. He further claims that the government's outrageous conduct warrants dismissal of his indictment. We review both of the district court's denials de novo, *see United States v. Ruckes*, 586 F.3d 713, 716 (9th Cir. 2009); *United States v. Black*, 733 F.3d 294, 301 (9th Cir. 2013), and affirm both orders.

This court has already examined the precise warrant at issue in the context of another case. *See United States v. Henderson*, 906 F.3d 1109 (9th Cir. 2018). We thus review the warrant and the related technology only briefly here.

In 2014, the Federal Bureau of Investigation ("FBI") began investigating "Playpen," an online forum for sending and receiving child pornography. In January 2015, the FBI seized Playpen's servers and later began to operate the Playpen website from FBI facilities in Virginia. In February 2015, the FBI obtained a warrant from a magistrate judge in the Eastern District of Virginia authorizing use of a Network Investigative Technique ("NIT"), in order to identify Playpen users ("the NIT warrant").

The NIT warrant authorized search of all "activating computers," or the computers "of any user or administrator who logs into [Playpen] by entering a username and password," "wherever [that computer was] located." When a person logged into, or "activated," Playpen with a username and password, the NIT technology would cause the user's computer to send seven pieces of identifying information to the government server, such as the computer's internet protocol address. *Id.* at 1112. This technology was allegedly necessary because Playpen was hosted on an anonymous network that allowed users to access websites without otherwise revealing identifying information. *See id.*

Using the NIT, the FBI found that the user "childpornstar" had registered with Playpen on January 3, 2015, a month before the FBI's takeover of Playpen, had accessed child pornography videos, and had actively logged onto Playpen for approximately 18 hours between January 3, 2015 and March 4, 2015. The FBI traced the user's IP address to a residence in San Francisco, which it searched pursuant to a separate warrant. The FBI seized a number of digital devices belonging to Vortman with more than 1,000 photographs and 150 videos of child pornography. Vortman was later charged with violating 18 U.S.C. § 2252(a)(2), (b)(1), "Receipt of Child Pornography" and 18 U.S.C. § 2252(a)(4)(B), (b)(2), "Possession of Child Pornography."

Vortman challenges the NIT warrant on two grounds. First, he argues that because the warrant was issued in violation of Federal Rule of Civil Procedure 41, evidence seized pursuant to it should be suppressed. In *Henderson*, we held that the NIT warrant violated Rule 41, but held that the good-faith exception nevertheless excused the violation. *See id.* at 1119–20. Vortman offers no reason to depart from that holding here, and we thus hold that the good-faith exception excused the violation here.

Next, Vortman argues that the NIT warrant was overbroad and was not supported by probable cause. We review the specificity of a warrant de novo, *United States v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003), and a finding of probable cause for clear error, *United States v. Meek*, 366 F.3d 705, 712 (9th Cir. 2004).

The NIT warrant was not overbroad. *See Henderson*, 906 F.3d at 1119. It described the place to be searched (activating computers) and the information to be seized (seven pieces of identifying information) with particularity. *See United States v. Smith*, 424 F.3d 992, 1004 (9th Cir. 2005).

Furthermore, the NIT warrant authorized only search of "activating" computers—i.e., those that logged into Playpen during the time the government operated the website with a username and password. In order to use an "activating

computer," a user had to first download and install software to use the anonymizing network on which Playpen operated. Next, a user could not access Playpen through the open internet, but would instead have to find and input Playpen's exact algorithmic address (which we decline to provide here). *Henderson*, 906 F.3d at 1111. In order to access Playpen's contents, the user would have to navigate past Playpen's homepage, which depicted two minor females with their legs spread apart, and register with a username and password. Because there were multiple affirmative steps required to be an "activating computer," the warrant applied to those actively attempting to access child pornography. It did not sweep too broadly.

Vortman next argues that the NIT warrant lacked probable cause because Playpen users could be attempting to access the legal content on Playpen, such as its fiction stories. The district court's finding of probable cause was not clear error. *See United States v. Vortman*, 2016 WL 7324987, at *7–*9 (N.D. Cal. Dec. 16, 2016). First, as the district court pointed out, we rejected a similar argument in *United States v. Gourde*, 440 F.3d 1065, 1070 (9th Cir. 2006). Second, the multiple affirmative steps a user had to take in order to access any Playpen content establish a "fair probability" that registered users were accessing illegal content. *Meek*, 366 F.3d at 712. That "fair probability" becomes considerable when

factoring in that the overwhelming majority of Playpen's content was patently illegal depictions of child pornography.

Finally, Vortman argues that the government acted so outrageously by operating Playpen as to warrant dismissal of his indictment. To prevail on a governmental misconduct claim, Vortman must meet the "extremely high standard" of showing that the facts underlying his arrest and prosecution "violate[] fundamental fairness" or are "so grossly shocking . . . as to violate the universal sense of justice." *Black*, 733 F.3d at 298; *see also United States v. Russell*, 411 U.S. 423, 431–32 (1973). Vortman fails to meet this high standard.

To determine whether government conduct was outrageous, a court generally considers the six *Black* factors. *See Black*, 733 F.3d at 303. The district court appropriately concluded that all six factors weighed against dismissal. *See Vortman*, 2016 WL 7324987, at *5–*6. The first two factors, (1) known criminal characteristics of the defendant and (2) individualized suspicion of the defendant, weigh against dismissal because the government reasonably believed that registered Playpen users were viewing and sharing child pornography. The next two factors, (3) the government's role in creating the crime of conviction and (4) the government's encouragement of the defendants to commit the offense, weigh against dismissal because Vortman voluntarily accessed Playpen before

6

government seizure and then again without any government prompting. Next, (5) the nature of the government's participation in the offense, weighs against dismissal because the government operated Playpen for only two weeks, acted as a mere observer, and began the enterprise only after Vortman had already accessed Playpen. Finally, (6) the nature of the crime being pursued and necessity for the actions taken, weighs against dismissal because due to the anonymous network on which Playpen operated, other investigative procedures were likely to fail.

Moreover, we have rejected the outrageous conduct argument in comparable governmental stings involving arguably more outrageous conduct. *See, e.g.*, *United States v. Mayer*, 503 F.3d 740, 754–55 (9th Cir. 2007); *United States v. Mitchell*, 915 F.2d 521, 525–26 (9th Cir. 1990). The government's conduct does not warrant dismissal of Vortman's indictment.

**AFFIRMED.**